**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 25 2012, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RICHARD J. THONERT**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMESON CURRY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1104-CR-175 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D04-1006-FC-135

**January 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Jameson Curry ("Curry") appeals from his conviction for one count of Child

Molesting, as a Class C felony.[1]

We affirm, but remand for sentence modification pursuant to Appellate Rule 7(B).

## Issues

Curry presents numerous issues for review. We reframe these as:

I.    Whether the trial court abused its discretion when it:

    A. Refused Curry's proffered jury instructions on Battery, as a Class B misdemeanor, as a lesser included offense;

    B. Precluded Curry from discussing the uncharged and uninstructed offense of Battery during closing argument;

II.   Whether the trial court's admission into evidence of a video recording of Curry's statement to police was reversible error because:

    A. The questions asked of and statements made to Curry by a detective violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution;

    B. The trial court's ruling on the admissibility of the recording did not comply with the procedural requirements of Indiana Code section 35-37-4-15;

    C. The video recording was otherwise inadmissible because it contained hearsay evidence that impermissibly bolstered testimony from Curry's wife;

III.  Whether the trial court abused its discretion when it excluded the testimony of Curry's therapist;

IV.   Whether the trial court was biased against Curry; and

---

[1] Ind. Code § 35-42-4-3(b).

V.     Whether Curry's sentence is inappropriate under Appellate Rule 7(B).

**Facts and Procedural History**

On March 31, 2010, around 5:30 a.m., while his wife, Crystal Nicole Curry ("Crystal") and daughter ("X.C.") were asleep in their Fort Wayne home, Curry entered the bedroom belonging to M.Z., Crystal's daughter and Curry's stepdaughter. Knowing that M.Z. was a heavy sleeper and believing her to be asleep, Curry placed M.Z.'s foot in his mouth, ran his tongue around her toes for several minutes, and masturbated.[2] Curry then left M.Z.'s room and went to work.

M.Z. was awake but pretended to be asleep, and did not react to Curry's conduct because she thought he was cleaning her toes. Later that day, M.Z. mentioned to Crystal what Curry had done. Crystal knew that Curry found women's feet sexually arousing[3] and that this was involved in her sexual life with Curry. She therefore called him and demanded an explanation. Curry admitted to having placed M.Z.'s feet and toes in his mouth, and eventually admitted to having entered M.Z.'s room twice before, having previously placed M.Z.'s feet in his mouth during each incident, and to having masturbated in the shower after the second of these incidents.

Curry agreed to move out of the house, and Crystal decided to take M.Z. and X.C. with her to Indianapolis for the early part of April 2010 while Curry moved. During this

---

[2] At trial, Crystal testified that Curry told her he had masturbated while M.Z.'s feet were in his mouth; Curry disputed this in an interview with police and at trial. In his brief before this court, Curry contends that his account is the correct one. In conformance with our standards of review on appeal, we present the facts most favorable to the verdict.

[3] Crystal characterized this as a "foot fetish" (Trial Tr. 172), and in an interview with police, Curry also used this term. (Ex. 1.)

period, Curry sought therapy from Jason Arbogast ("Arbogast"), a therapist in Fort Wayne. Also during this period, Crystal contacted the Fort Wayne Police Department about Curry's activities with M.Z.

On April 28, 2010, after having spoken with Crystal on several occasions, Detective Kathleen Morales ("Detective Morales") of the Fort Wayne Police Department contacted Curry, who agreed to come to the police station for an interview with Detective Morales on the following day. At the beginning of the interview, Detective Morales provided Curry with a written advisement of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Curry acknowledged that he understood and waived these rights and spoke with Detective Morales for about ninety minutes.

During the interview, the audio and video of which were recorded, Curry admitting to having entered M.Z.'s room and put her feet and toes in his mouth on three occasions between late January 2010 and March 31, 2010. Curry discussed his therapy sessions and their purpose, admitted to having masturbated in the shower after the second incident in M.Z.'s room, and disputed Crystal's account (relayed to Curry through Detective Morales) that he had masturbated while M.Z.'s feet were in his mouth on March 31. Curry admitted his conduct was "inappropriate" and worried him because he was concerned it could become criminal or sexual. Nevertheless, Curry stated that he got an "adrenaline rush" from his conduct, but asserted that he engaged in the activity with M.Z.'s feet because of psychological "control" issues, not for purposes of sexual arousal.

As a result of Detective Morales's investigation, on June 21, 2010, the State charged

4

Curry with one count of Child Molesting.

In the lead-up to trial, Curry filed numerous motions in limine with the trial court requesting rulings on the use of certain terminology during the trial. Curry sought in particular to limit the use of the terms "foot fetish" with respect to his sexual practices, "confession" with respect to his interview with Detective Morales, and "victim" with respect to M.Z. The trial court denied these requests, but the State agreed to avoid using the terms to the extent possible. Curry also sought through several motions to exclude portions or all of the video recording of his interview with Detective Morales, taking issue with particular statements by Detective Morales that Curry contended were inadmissible hearsay statements or statements of opinion about Crystal's truthfulness. The trial court rejected each of Curry's motions, and ruled the recording admissible in its entirety.[4]

On March 8, 2011, and March 9, 2011, a jury trial was conducted. Curry requested the court to instruct the jury on Battery, as a Class B misdemeanor, as a lesser included offense to the charged offense of Child Molesting. The trial court did not issue Curry's proffered instructions and instead instructed the jury only as to Child Molesting. At the trial's conclusion, the jury found Curry guilty of Child Molesting as charged.

On April 8, 2011, a sentencing hearing was conducted, at the conclusion of which the trial court entered judgment against Curry and sentenced him to five years imprisonment in

---

[4] The version of the recording ruled admissible and entered into evidence at trial was redacted to exclude matters that both the State and Curry agreed did not convey information of probative value to resolution of the case. The material excluded consisted primarily of preliminary matters with respect to Curry's Miranda rights, which Curry waived, and of conversations between Curry and a representative of the Department of Child Services on matters not relevant to the instant case.

5

the Department of Correction.

This appeal ensued. Additional facts and procedural details will be supplied as needed.

**Discussion and Decision**

<u>Curry's Proffered Battery Instructions and Closing Argument</u>

Curry challenges his conviction for Child Molestation in part by arguing that the trial court's decision not to instruct the jury to consider Battery, as a Class B misdemeanor, as a lesser included offense to the Child Molesting charge was reversible error. The trial court declined as part of both its preliminary and final instructions to the jury to issue Curry's proffered instructions on Battery as a lesser included offense of Child Molesting; Curry contends both of these decisions were in error. Curry also contends that the trial court erroneously precluded him from addressing the absence of instructions on Battery during his closing argument.

*Preliminary Instructions*

We turn first to the trial court's preliminary instructions to the jury. Our jury rules provide that preliminary instructions "shall instruct the jury before opening statements … at least [as to] the following: (1) the issues for trial." Ind. Jury Rule 20(A). Our supreme court has held that "[p]otential lesser included offenses are not appropriate for preliminary instruction … [because a] trial court simply cannot determine whether an instruction on a lesser included offense is proper prior to hearing the evidence." <u>Greene v. State</u>, 515 N.E.2d 1376, 1382 (Ind. 1987), <u>overruled on other grounds</u>, <u>Myers v. State</u>, 532 N.E.2d 1158 (Ind.

6

1989) (denying petition to transfer and clarifying <u>Greene</u> with respect to the correctness of a final instruction on circumstantial evidence).

Here, Curry tendered to the trial court proposed preliminary and final jury instructions on Battery as a lesser included offense. The trial court denied Curry's proposed preliminary instructions, observing that there was no evidence at that point in the proceeding to serve as a basis upon which to issue instructions for the uncharged offense of Battery. We agree with the trial court, and find no error in its rejection of Curry's Battery instructions from the preliminary jury instructions.

*Final Instructions*

We turn now to the trial court's decision not to issue final instructions on Battery as a lesser included offense to Child Molesting. Our supreme court set forth the standard for issuing a jury instruction on a lesser included offense in <u>Wright v. State</u>, 658 N.E.2d 563 (Ind. 1995). When deciding whether to instruct the jury on a lesser included offense, a trial court must first "compare the statute defining the crime charged with the statute defining the lesser included offense" to determine whether the claimed lesser included offense is inherently included in the charged offense, either because the lesser offense "may be established 'by proof of the same material elements or less than all the material elements' defining the crime charged" or because the only distinction "is that a lesser culpability is required to establish the commission of the lesser offense." <u>Id.</u> at 566-67.

If the alleged lesser included offense is not inherently included in the charged offense, the trial court "must compare the statute defining the alleged lesser included offense with the

7

charging instrument." Id. at 567. "If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense," the lesser included offense is factually included in the charged offense. Id. Where the claimed lesser included offense is neither inherently nor factually included in the charged offense, the trial court should not give the proffered instruction to the jury. Id.

If, however, the claimed lesser included offense is either inherently or factually included in the charged offense, the trial court

> must look at the evidence presented in the case by both parties. If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense. If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction.

Id. (citations omitted). "[W]hen addressing the question of whether there is a serious evidentiary dispute, the court must evaluate the evidence presented by both parties." Fisher v. State, 810 N.E.2d 674, 680 (Ind. 2004) (citing Wright, 658 N.E.2d at 567). Where a trial court finds that there is no serious evidentiary dispute regarding the elements of the alleged offenses, we review its finding for an abuse of discretion. Brown v. State, 703 N.E.2d 1010, 1020 (Ind. 1998).

Curry was charged with Child Molesting, as a Class C felony. To obtain a conviction, the State was required to prove beyond a reasonable doubt that Curry performed or submitted to fondling or touching with M.Z., who was at the time under fourteen years of age, with the

8

intent of arousing or satisfying either M.Z.'s or his own sexual desires. I.C. § 35-42-4-3(b); Appellant's App. 21. Curry submitted a proposed jury instruction as to the elements of Battery, as a Class B misdemeanor. The statutory definition provides that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor." I.C. § 35-42-2-1(a). "While the offense of battery requires knowing or intentional conduct in accordance with IC 35-42-2-1, the requisite intent may be presumed from the voluntary commission of the act." Mishler v. State, 660 N.E.2d 343, 348 (Ind. Ct. App. 1996) (citing Carty v. State, 421 N.E.2d 1151 (Ind. Ct. App. 1981)).

At trial, the only disputed element of the charged offense of Child Molesting was Curry's intent. The trial court here found that there was no serious evidentiary dispute on Curry's intent that would warrant giving the jury instructions on the lesser included offense of Battery. Curry contends that the trial court erred.

Curry draws our attention to this court's decision in Pedrick v. State, 593 N.E.2d 1215 (Ind. Ct. App. 1992). In that case, we reversed the trial court's determination that Pedrick, who was convicted of Child Molesting, was not entitled to an instruction on the lesser included offense of Battery. Id. at 1215. The defendant in that case, who was working as a substitute physical education teacher, touched several elementary school girls on their shoulders, buttocks, and breasts above their clothing. Id. at 1215-16. Pedrick admitted he had touched the girls, but claimed he had done so intending to provide encouragement during relay races in their physical education class. Id. at 1217. We concluded that there was a

serious evidentiary dispute as to Pedrick's intent in his conduct toward the girls and that Pedrick was entitled to a Battery instruction; we therefore remanded for retrial. Id.

Among the cases the State cites in response is our more recent decision in Spann v. State, 850 N.E.2d 411 (Ind. Ct. App. 2006). In Spann, the defendant twice touched his thirteen year-old victim's genitalia—once with a washcloth while in the shower with the victim, and once underneath his victim's clothes with his hand. Id. at 413. Spann was found guilty of two counts of Child Molesting, and on appeal argued that the trial court should have given the jury his proffered instruction on Battery as a lesser included offense. Id. at 414-15. We affirmed the trial court, holding that under the circumstances of that case, where there was no evidence that Spann's teenaged victim was somehow disabled or otherwise incapable of caring for himself, there could be no purpose in Spann's touching his victim's penis other than to arouse either his or his victim's sexual desire. Id. at 415-16. We distinguished Spann's case from Pedrick, noting that Spann's claims that he was helping to clean his victim or simply lacked any sexual intent when he touched the youth were "illogical." Id. at 416.

Here, Crystal and Curry both testified that their sexual relationship involved Curry being sexually aroused by feet, which he described in his interview with Detective Morales as being an area of the body that he found sexually attractive in women. They each testified that parts of their sexual relationship involved Curry touching Crystal's feet, which Curry characterized in his interview with Detective Morales as a "foot fetish," which he explained to mean that he was sexually aroused by women's feet in addition to other body parts. (Ex. 1.) Crystal testified that Curry told her in several conversations that he had masturbated after

10

or during the second and third occasions in which he put M.Z.'s feet in his mouth.

During his interview with Detective Morales, Curry at first stated that he had sought therapy because he knew that his conduct with M.Z. had been inappropriate, but professed not to know why he engaged in that conduct except that stressors caused him to seek an outlet for feelings that he lacked control of his life. Later in the interview, Curry conceded that his conduct with M.Z. "could have been sexual" and that he could not deny his conduct was "perhaps" or "might have been" sexual. (Ex. 1.) Curry admitted during the interview that he had been "inappropriate" with M.Z., had been "excited" by putting her feet and toes in his mouth, and experienced "an adrenaline rush" from it. (Ex. 1.) He alternately insisted that he did not know why he was excited by this conduct or claimed to be excited because it was an opportunity to exercise complete control over a situation in his life. He also indicated that he sought therapy because he was concerned about what "could have" happened had his conduct continued. (Ex. 1.)

Curry later qualified these statements during his trial testimony by saying he was "unsure" of his motivation and "didn't feel it was a sexual thing," but worried that it could have become so. (Trial Tr. 263.) Curry admitted at trial that his contact with M.Z. was "inappropriate" (Trial Tr. 266), and "crossed a boundary" (Trial Tr. 260), but otherwise denied that his conduct with M.Z. was sexual or criminal. He testified that he sought therapy because he was concerned that he might commit a criminal act upon M.Z. in the future—not that he had committed a criminal act in the past intending some offensive contact with any purpose other than sexual arousal. Curry acknowledged that he had considered entering

11

M.Z.'s room to put her feet in his mouth several times before first doing so in January 2010, and that he felt guilty and disgusted with himself both before he began to enter M.Z.'s room and after each of the three incidents. Curry also confirmed that after the second incident in M.Z.'s room, he masturbated in the shower twenty or twenty-five minutes afterward, having in the meantime eaten breakfast and watched television.

On these facts, we think Spann more apposite than Pedrick. Given the entirety of the evidence presented at trial, we cannot see any other inference than that Curry's intent at the time of the charged offense was to arouse or gratify his sexual desires. While there is somewhat contradictory evidence on whether Curry masturbated in M.Z.'s room or after he left her room and on which occasions that might have occurred, as well as some evidence from Curry that he was personally unsure of the reason for his actions in retrospect, this does not put into serious evidentiary dispute whether Curry's intent at the time of the offense was to commit either misdemeanor Battery or Child Molestation. In the absence of a serious evidentiary dispute, we cannot conclude that the trial court erred here when it refused to instruct the jury on Battery as a lesser included offense to Child Molesting.

*Closing Argument*

Curry also contends that during closing argument the trial court erred in precluding him from arguing that 1) he was not guilty, or 2) that the jury could consider the uncharged and uninstructed offense of Battery and find him not guilty of Child Molesting in the absence of jury instructions on Battery. He cites in support of this proposition Indiana Constitution article 1, section 19, which provides that in a criminal case, "the jury shall have the right to

12

determine the law and the facts."

"[I]t is proper for counsel to argue both law and facts" during closing argument. Taylor v. State, 457 N.E.2d 594, 599 (Ind. Ct. App. 1983). We afford the trial court discretion in its control of closing argument, Rouster v. State, 600 N.E.2d 1342, 1347 (Ind. 1992), and the court may limit argument within the limits of that discretion. Taylor, 457 N.E.2d at 599. Moreover, "'a jury has no more right to ignore the law than it has to ignore the facts in a case.'" Lohmiller v. State, 884 N.E.2d 903, 911 (Ind. Ct. App. 2008) (quoting Holden v. State, 788 N.E.2d 1253, 1255 (Ind. 2003)). Thus, jury nullification is not a right afforded under Article I, section 19. Holden, 788 N.E.2d at 1254-55.

Here, during closing argument, Curry argued that his intent in putting M.Z.'s feet and toes in his mouth was to exert control over an area of his life rather than to arouse or satisfy his sexual desires. The argument then proceeded:

> [M.Z.] is the witness that shows he's not guilty of a Class C felony. There's another crime, Battery a Class B Misdemeanor, which says a person who knowingly or intentionally touches another person in a rude or
>
> [THE STATE]:      Objection Judge, I need to object. May we approach.
>
> ***

(Trial Tr. 315-16.)

Upon the State's objection, a discussion commenced among the trial court and the parties addressing the absence of a jury instruction on Battery, during which Curry argued that because the jury is the judge of the law and the facts, it was "entitled to know that there is another charge." (Trial Tr. 317.) The trial court granted the State's request that the jury be

13

admonished to disregard the discussion of Battery, and Curry moved for a mistrial.[5] Curry's

argument continued:

> Well, the prosecutor of course has chosen to file a Class C felony. And that
> means they have the obligation to, explain to you, each one of individual [sic]
> why you should return a verdict of guilty…. Under this evidence … [i]t's not
> fair, it's insufficient to establish anything … [t]he testimony of Jameson Curry,
> tells you he didn't intend to arouse or satisfy his sexual desires with M.Z….

(Trial Tr. 318.)

Despite the absence of jury instructions as to Battery—a decision we have affirmed—

Curry sought to introduce argument outside the scope of the law the trial court had held was

applicable to the case. Curry's closing argument sought to encourage the jury to engage in

jury nullification by concluding that Curry was guilty of Battery, not Child Molesting, and

that in the absence of Battery instructions the appropriate result was to return a verdict of not

guilty on the sole charge of Child Molesting.

Curry's attempt to discuss Battery during final argument was not properly within the

scope of the law upon which the jury was instructed and, despite Curry's insistence to the

contrary, the trial court did not preclude him from arguing directly that he was not guilty of

Child Molesting as charged. We therefore cannot conclude that the trial court abused its

discretion when it refused to permit discussion of the uncharged offense of Battery during

Curry's closing argument and admonished the jury to disregard the portion of Curry's

argument that sought to address the law of Battery.

---

[5] Curry does not directly address this motion on appeal.

## Admissibility of Video Recording of Morales's Interview of Curry

We turn now to Curry's contention that the trial court's admission into evidence of the recording of Detective Morales's interview of Curry was an abuse of discretion. Curry advances two arguments: 1) admission of the recording and limitation of his attempt to introduce testimony contrary to Detective Morales's statements violated his rights under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution; and 2) Detective Morales's questions and statements to Curry constitute impermissible hearsay because they repeat statements Crystal made to Morales and therefore bolster Crystal's testimony.

The admission of evidence is within the sound discretion of the trial court, and we will not reverse an evidentiary ruling absent an abuse of that discretion. Amos v. State, 896 N.E.2d 1163, 1167 (Ind. Ct. App. 2008), trans. denied. A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before it. Id. at 1168. In order to preserve an error in an evidentiary ruling for appeal, "a substantial right" of a party must be affected by the ruling. Evid. R. 103(a). Where evidence is admitted over an objection, that objection must also be "timely" and "stat[e] the specific ground of objection, if the specific ground was not apparent from the context." Evid. R. 103(a)(1). Where the trial court excludes evidence, to preserve the matter for appeal the affected party must make an offer of proof conveying "the substance of the evidence" to the court unless it was already "apparent from the context within which questions were asked." Evid. R. 103(a)(2).

15

*Curry's Confrontation Rights*

Curry contends that admission of the recording of Detective Morales's interview violated his confrontation rights under the Sixth Amendment to the U.S. Constitution and Article 1, section 13 of the Indiana Constitution because the detective's questions and statements to Curry during the interview are effectively testimony against him. Curry thus contends that admission of the recording "denied his right to confront Detective Morales on the content of the statements she made in the DVD interview when the court, on the State's objection, ruled that the DVD spoke for itself." (Appellant's Br. 21.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." U.S. Const. amend. VI. This provision, the Confrontation Clause, has been interpreted by the Supreme Court to mean that, separate from any other rule of evidence, out-of-court testimonial statements are admissible in criminal trials only where the individual who made those statements is available for cross examination during the trial, or where the individual is unavailable to testify at trial but the defendant had an "adequate opportunity" in certain adversarial proceedings to conduct a cross-examination of the witness under oath. Crawford v. Washington, 541 U.S. 36, 57 (2004). Though the Court declined to provide a fixed definition of what constitutes a testimonial statement, it expressly held that "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard" because they "bear a striking resemblance to examinations by justices of the peace in England." Id. at 52.

16

The Indiana Constitution affords criminal defendants a similar guarantee, providing that "the accused shall have the right … to meet the witnesses face to face." Ind. Const. art. I, § 13(a). Our supreme court has interpreted this amendment as requiring that a defendant have the right to cross-examine witnesses against him at trial. Pigg v. State, 603 N.E.2d 154, 155 (Ind. 1992).[6]

Curry attacks several of the trial court's evidentiary rulings on confrontation grounds. Curry insists that Detective Morales's questions and statements made to Curry during the interview constitute out-of-court testimonial statements by Detective Morales, which in turn include inadmissible hearsay in the form of statements Crystal made to Detective Morales that Detective Morales in turn repeated during the interview. Curry also argues that because he could not cross-examine Detective Morales as to individual questions and statements from the interview, those statements—and the DVD itself—were inadmissible. Finally, Curry contends that he was deprived of his confrontation rights because the trial court sustained the State's objection as to a specific question he asked of Detective Morales during cross-examination.

Our review of the record at trial reveals that Curry did not object to a loss of confrontation rights at trial and did not file a pre-trial motion attempting to suppress or limit the use of the recording on confrontation grounds. Nor is it clear from the context of the objections that the trial court would have been aware that Curry sought to preserve his

---

[6] Beyond citing Indiana Constitution article 1, section 13, and Pigg, supra, Curry articulates no further argument with respect to any jurisprudence specifically related to the Indiana Constitution.

confrontation rights, since Curry objected to use of the recording on hearsay grounds only. Thus, Curry's argument on the admissibility of the interview recording on confrontation grounds is waived.

Waiver notwithstanding, the confrontation concerns articulated by Crawford implicate situations where an individual has made out-of-court statements of a testimonial nature and that individual is unavailable to testify at trial or was not otherwise cross-examined before trial. That is not the case here: the DVD recording of Curry's interview with Detective Morales was introduced into evidence and played for the jury during the State's direct examination of the detective. See Crawford, 541 U.S. at 59 n. 9 ("when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements"). Curry cross-examined Detective Morales immediately after the State concluded its direct examination, and the cross-examination included inquiry into her questions and statements to Curry and Curry's answers in response. Thus, we cannot conclude that the trial court abused its discretion by denying Curry's motions to have Detective Morales's interview with him completely excluded.

We also find no abuse of discretion in the trial court's ruling sustaining the State's objection to a specific question Curry asked of Detective Morales on cross-examination. The exchange among Curry, the State, and the trial court proceeded thus:

> [CURRY]:    And one time you asked him well why would you do this and he said honestly I wasn't thinking much at all, part of it hated me for doing it, but it didn't give me any sexual satisfaction, I don't know why I did it, that's why I'm going to therapy to put a stop to it.

18

[THE STATE]: Judge, again same objection, we've all just watched the video to restate the video I think is inappropriate through this witness. So I I [sic] would object the exhibit speaks for itself.

COURT: Sustained.

[CURRY]: He was very clear he was going to therapy because he was felt [sic] he had been inappropriate with his step-daughter, isn't that correct?

[MORALES]: That's correct.

(Tr. 225-26.)

Curry now contends that the trial court's ruling violated his confrontation rights. During his cross-examination of Detective Morales, Curry did not articulate a response to the objection or to the trial court's ruling, but rather moved on to ask another question. Moreover, Curry does not articulate an argument beyond a bare contention that the trial court's ruling that the video spoke for itself violated his confrontation rights. Since Curry waived his challenge at trial and has in any event failed to set forth argument as to how his confrontation right may have been violated in this instance, we cannot conclude that the trial court abused its discretion when it sustained the State's objection.

Curry also argues that the trial court's decision to limit Arbogast's testimony violated his right to confront the State's witnesses, specifically Detective Morales. As we have already observed, confrontation encompasses the opportunity to conduct a meaningful cross-examination of the State's witnesses. Crawford, 541 U.S. at 57; Ind. Const. art. I, § 13(a); Pigg, 603 N.E.2d at 155. Calling witnesses on one's own behalf is a right provided for by the Indiana Constitution, but it is not confrontation. Ind. Const. art I, § 13(a) (providing the right

19

for an accused "to have compulsory process for obtaining witnesses in his favor" as a right separate from the right to confront witnesses "face-to-face"). The admissibility of evidence that a witness may offer is within the discretion of the trial court. Amos, 896 N.E.2d at 1167.

Here, Curry's contention is not that the trial court impaired his cross-examination of Detective Morales by denying his attempt to introduce testimony from Arbogast. He instead contends that the trial court interfered with his efforts to introduce into evidence testimony from Arbogast to which the State "opened the door" through its introduction of the video recording of the interview with Detective Morales (Appellant's Br. 18), that is, evidence that would allow the jury to weigh the merits of Detective Morales's statements. This is not cross-examination, and thus the trial court's limitation of Curry's examination of Arbogast did not infringe upon Curry's confrontation rights under the United States and Indiana constitutions.

*Curry's Motions under Indiana Code Section 35-37-4-15*

Curry also contends that the trial court's decision to admit the recorded interview into evidence was an abuse of discretion because it allowed impermissible hearsay statements from Detective Morales into evidence. Curry submitted multiple pre-trial motions seeking rulings from the trial court on the admissibility of the recording. The last of these sought to draw the trial court's attention to specific questions and statements by Detective Morales. Each motion requested that, pursuant to Indiana Code section 35-37-4-15, the trial court determine the admissibility of the evidence the State intended to present at trial. The State contended that the statute did not apply.

20

In his pre-trial motions and at trial, Curry also objected to the admission of the recording on numerous grounds, specifically contending that Detective Morales's questions and statements in the interview, particularly as they related to Curry's foot fetish, were irrelevant, were hearsay or hearsay-within-hearsay to the extent they included information from Crystal, and improperly bolstered Crystal's testimony by indicating that Detective Morales believed Crystal was telling the truth. On appeal, he now contends that the trial court did not comply with the requirements of section 35-37-4-15 and Detective Morales's statements on the DVD were inadmissible on the various grounds advanced at trial and above.

In prosecutions for Child Molesting or Incest, Indiana Code section 35-37-4-15 provides for the admissibility of evidence of prior commission of child molesting, incest, or attempt or conspiracy to commit child molesting (as was charged here) or incest against the same victim or a different victim. I.C. § 35-37-4-15(a). Where the State intends to introduce such evidence, it must disclose that evidence (including witness statements or a summary of the expected testimony) to the defendant at least fifteen days before trial unless good cause justified later disclosure. I.C. § 35-37-4-15(b). A trial court is required to hold a hearing on the admissibility of such evidence and enter an order "stating what evidence may be introduced," provided that the probative value of the evidence is not substantially outweighed by the same factors as are set forth in Evidence Rule 403. I.C. § 35-37-4-15(c).

Curry contends that the trial court did not comply with section 35-37-4-15 because it did not rule on the specific statements of Detective Morales to which he sought to draw

attention in his pre-trial motions and at trial. The State responds that Curry's objections were not sufficiently specific to allow the trial court to assess any of Detective Morales's statements and that Curry's argument provides no authority for the proposition that the trial court was required to rule on the admissibility of any specific statements.

We cannot agree with the State that Curry's motion and objections were not sufficiently specific. Neither can we agree with Curry, however, that the trial court was required to make specific rulings on each statement to which he objected. First, this court has twice stated that the statute is a nullity. See Day v. State, 643 N.E.2d 1, 2 (Ind. Ct. App. 1994) (citing Brim v. State, 624 N.E.2d 27, 33 n.2 (Ind. Ct. App. 1993), trans. denied, stating that section 35-37-4-15 "conflicts with the rule adopted in Lannan [v. State, 600 N.E.2d 1334 (Ind. 1992)] [and] would also appear to be a nullity"), trans. denied. Second, the trial court's order that the entire DVD would be admissible complies with the plain language of the statute, which requires that "the court shall enter an order stating what evidence may be introduced." I.C. § 35-37-4-15(c). We therefore cannot conclude that the trial court violated section 35-37-4-15, let alone that its decision resulted in prejudice to Curry.

*Curry's Other Objections to Detective Morales's Statements in the Interview*

At trial, Curry objected to the admission of the recorded interview with Detective Morales in its entirety and with respect to certain of Detective Morales's statements. Curry again challenges the admissibility of the recording upon appeal, contending that Detective Morales's statements are hearsay, hearsay-within-hearsay to the extent they repeat Crystal's statements to her, and are impermissible expressions of opinion as to Crystal's truthfulness

22

under Evidence Rule 704(b). The State contends that Curry has waived these arguments on appeal for want of authority and citation to the record, and that even if the evidence was admitted erroneously, there is sufficient additional evidence to sustain Curry's conviction.

We agree with the State as to Curry's hearsay challenges. On appeal, Curry recites a litany of "[g]rounds for objections," including "hearsay; assuming facts not in evidence; if relevant, the prejudice outweighed the probative value and should be excluded; the question assumed facts not in evidence; the question related to the opinion of the questioner; the content of the question contained speculation or a conclusion; and questions that were not supported by an evidence." (Appellant's Br. 22.) Curry cites limited authority, but fails to develop a corresponding argument. See Ind. Appellate Rule 46(A)(8)(a) (requiring "the contentions of the appellant … supported by cogent reasoning" and "citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on"). To the extent they lack proper argumentation, then, these claims of error are waived.

Curry's remaining argument is his contention that some of Detective Morales's statements to him during the interview were inadmissible because they were opinion testimony as to the truthfulness of Crystal's statements under Evidence Rule 704(b). Yet our review of the record does not reveal any objections at trial on this basis. Curry does not direct us to specific instances of Detective Morales's statements in a more-than-hour-long interview that should have been subject to exclusion. Nor does he make anything beyond a bald assertion that "Detective Morales was allowed to vouch for Crystal Curry's truthfulness, through statements framed as questions." (Appellant's Br. 22.)

23

It is not this court's role to develop arguments for parties on appeal, <u>Bass v. State</u>, 797 N.E.2d 303, 305 (Ind. Ct. App. 2003), and we decline to do so here. Moreover, it is incumbent upon the appellant to preserve error in evidentiary rulings for this court's review, Evid. R. 103(a)(2), and Curry has failed to do so here. Curry has therefore waived his argument that Detective Morales's statements in the interview were improperly admitted opinion evidence as to Crystal's truthfulness.

Waiver notwithstanding, our review of the record does not indicate that Detective Morales intended her statements regarding Crystal's truthfulness as assertions of fact or opinion intended to bolster Crystal's credibility at trial. Rather, Detective Morales intended instead to elicit Curry's responses, as she frequently sought to obtain statements from Curry that contrasted with what Detective Morales indicated Crystal had told her. <u>See</u> <u>Smith v. State</u>, 721 N.E.2d 213, 216-17 (Ind. 1999) (holding admissible statements by a police officer to a defendant where the statements regarding others' opinions were intended to provoke a response, even without an admonishment to the jury regarding the purpose of the statements). We therefore cannot conclude that admission of the video recording was an abuse of discretion.

Trial Court's Exclusion of Testimony from Arbogast

Curry also raises for our review whether the trial court erroneously ruled as inadmissible certain testimony from Arbogast about Curry's therapy. The State objected to the introduction of this testimony because it would be needlessly cumulative, and the trial court agreed.

Relevant evidence is that which tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. Only relevant evidence is admissible. Evid. R. 402. "Though relevant, evidence may be excluded if its probative value is substantially outweighed by … considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403.

Curry argues that the trial court's exclusion of Arbogast's testimony was an abuse of discretion, and contends that Arbogast's testimony would "explain, clarify, or contradict the information given by Morales' questions." (Appellant's Br. 11.) During direct examination, Curry asked Arbogast, "[W]hat was your objective in with [sic] these counseling sessions?" (Tr. 238.) The State objected that Arbogast's testimony would be irrelevant and needlessly cumulative. Curry responded and made an offer of proof that Arbogast would establish that Curry came to him "in an effort to understand and figure out why he put [M.Z.'s] feet and toes [in] his mouth" and that, while Curry was asked that question many times, "he just doesn't have the answer he knows its probably not sexual might be but probably not [sic]." (Tr. 240.) The trial court sustained the State's objection.

To the extent Curry sought to introduce evidence that he decided to seek therapy and the reasons for it, this matter was already in evidence through Crystal's and Detective Morales's testimony and through Curry's statements in his interview with Detective Morales. If Curry sought to elicit Arbogast's testimony in order to provide opinion evidence as to Curry's intent in his conduct toward M.Z., our rules of evidence make inadmissible opinion

25

testimony "concerning intent, guilt, or innocence in a criminal case." Evid. R. 704(b). Arbogast's testimony, if introduced on this basis, would still have been inadmissible. Curry offered no other proof concerning the probative value of Arbogast's testimony about Curry's purposes in seeking therapy. Thus, we cannot conclude that the trial court erred in limiting Arbogast's testimony regarding Curry's reasons for seeking counseling.

Bias

We next turn to Curry's claim that the trial court was biased against him, resulting in adverse rulings throughout the proceedings.

"The law presumes that a judge is unbiased and unprejudiced." Smith v. State, 770 N.E.2d 818, 823 (Ind. 2002). "Such bias and prejudice exists only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding." Id. Adverse rulings are not sufficient of themselves to establish bias or prejudice. Resnover v. State, 507 N.E.2d 1382, 1391 (Ind. 1987) (citing Thomas v. State, 486 N.E.2d 531 (Ind. 1985)). The mere assertion of bias or prejudice is also not sufficient; rather, it must be established from a judge's actual conduct that bias or prejudice "place[d] the defendant in jeopardy." Smith, 770 N.E.2d at 823. As our supreme court has observed:

> In assessing a trial judge's partiality, we examine the judge's actions and demeanor while recognizing the need for latitude to run the courtroom and maintain discipline and control of the trial. Timberlake v. State, 690 N.E.2d 243 (Ind. 1997). "Even where the court's remarks display a degree of impatience, if in the context of a particular trial they do not impart an appearance of partiality, they may be permissible to promote an orderly progression of events at trial." Id. at 256 (quoting Rowe v. State, 539 N.E.2d 474, 476 (Ind. 1989)).

26

Everling v. State, 929 N.E.2d 1281, 1288 (Ind. 2010).

Curry contends that the trial court was biased based upon numerous adverse rulings against him, including pre-trial rulings. Curry also seeks to draw our attention to the judge's demeanor and statements which, while not rulings, he nevertheless contends are evidence of the judge's bias. Curry neither moved for a new judge before trial nor objected to any statements or conduct by the judge during the trial. Rather, he presents a "compilation of the Court's remarks and demeanor towards [him] and trial counsel" that he contends "showed a bias" favoring the State (Appellant's Br. 26), and compares his case to, among others, Everling.

In Everling, our supreme court reversed a defendant's convictions for several sex offenses after concluding that a combination of the trial court's statements both in and out of the presence of the jury, taken together with numerous adverse and inconsistent rulings on motions and evidentiary questions, demonstrated judicial bias. Id. at 1290. Among the trial court's statements in Everling were contentions that the defendant's attorney had conducted himself unethically in Everling's case and in several others and that defense counsel had faked illness or used it as an excuse to delay trial, id. at 1285-86, 1290; an instance when the trial court indicated agreement with defense counsel's frustrated remark that "I must be a complete idiot," id. at 1286; a question to defense counsel about whether he had ever been in a knife fight in response to the State's objection to a question regarding what the alleged victim had told a relative, id. at 1286, 1290; and a comment in front of the jury questioning Everling's counsel's competence based upon his agreement with the State to limit the scope

27

of cross-examination. Id. The court in Everling also noted that the trial court in that case impermissibly interjected itself into the examination of witnesses, ruled inconsistently and sometimes erroneously on motions, and abused its discretion when it refused to allow critical testimony from an expert witness who was identified by Everling on the eve of trial. Id. at 1290-91.

To the extent that Curry challenges the trial court's rulings as biased, he has failed to establish that those rulings were erroneous, let alone prejudicial. Numerous of the adverse rulings to which Curry points relate to the admissibility of Arbogast's testimony or the trial court's refusal to allow Curry to discuss the uncharged lesser included offense of Battery during closing argument. We have already affirmed the trial court's rulings on these matters, and thus Curry cannot establish prejudice from these rulings.

Curry also points to the trial court's responses to his objections and requests at trial as evidence of bias. For example, Curry contends that the trial court on several occasions declined to allow trial counsel to approach the bench to make an objection or asked the ground for an objection within the jury's hearing. On one of these occasions, Curry contends that the trial court refused to allow counsel to approach the bench; yet the record reveals that immediately after the response of "No," the court and counsel for the parties conducted a discussion at the bench on the issue Curry sought to raise. (Tr. 168.)

Curry complains that on another occasion the trial court refused to permit a hearing on a motion for a mistrial after objecting to certain questions asked by the prosecution, responding to counsel's request to approach the bench with the question, "For what?" (Tr.

28

178.) After expressing some concern at the bench with the trial judge's seeming frustration and discussion with the trial court and the State, Curry requested that the trial court admonish the jury that statements by the prosecutor are not evidence, and the trial court so admonished the jury.[7] We find nothing in these events outside the degree of "latitude" we afford trial courts "maintain[ing] discipline and control" over a trial. Everling, 929 N.E.2d at 1288.

Curry also points to statements by the trial court outside the presence of the jury as demonstrating bias. In one statement during a pretrial hearing, the trial court referred to Curry's interview with Detective Morales as a "confession" (Motion to Continue Tr. 4), to which Curry now points as evidence of bias. In response to Curry's objection, the trial court corrected itself and further instructed the State not to use the term "confession" during trial, and Curry points to no other instance in which the term was used. Curry also sees bias in the court's sentencing statement, in which the court rejected his decision to seek therapy as a proposed sentencing mitigator because the court concluded that he had "attempted to manipulate everybody with counseling." (Sentencing Tr. 11.) This does not point to any bias on the merits of Curry's case itself, but rather relates to the trial court's doubts as to the genuineness of Curry's motives in seeking therapy, a question Curry placed before the court when he proposed his decision to seek therapy as a mitigating factor at sentencing.[8]

Unlike Everling and other cases in which this court or our supreme court have ordered new trials because of judicial bias, we do not find actual bias in the form of adverse rulings

---

[7] Outside of his claim of judicial bias, Curry does not take direct issue with the denial of his motion for mistrial.

[8] We discuss below whether the trial court's rejection of this proposed mitigator was an abuse of discretion.

or statements of the trial court. Absent statements or rulings that reflect actual bias on the part of the trial court, we cannot agree with Curry that the trial court's statement and rulings, taken separately or together, demonstrate bias against Curry, let alone that the trial court's rulings may have prejudiced Curry's case before the jury.

Curry's Sentence

We turn to Curry's last issue, whether the trial court abused its discretion in finding aggravating and mitigating factors at sentencing and whether his sentence is inappropriate under Appellate Rule 7(B).

"So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 290 (Ind. 2007), clarified on other grounds, 875 N.E.2d 218 (Ind. 2007). This includes the finding of an aggravating circumstance and the omission of finding proffered mitigating circumstances. Id. at 490-91. When imposing a sentence for a felony, the trial court must enter "a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence." Id. at 491.

Here, Curry contends that the trial court abused its discretion by finding in its sentencing statement that his decision to seek counseling was an aggravating factor. We cannot agree. During Curry's sentencing, the trial court stated:

> Your attorney has asked that I consider the fact that the crime won't occur again, um, as a mitigating circumstance um, I don't know that that is an adequate mitigator and I refuse to find that as such. He also asked that I consider the fact that you went into counseling right after the event, um, and continued counseling through your trial, um, I don't consider that to be a mitigating circumstance Mr. Curry. Counseling um, is suppose [sic] to be

30

rehabilitative its suppose [sic] to correct behavior um, its [sic] odd that the State made the argument that it may [have been an attempt to manipulate others] because I was thinking the same thing. You attempted to manipulate everybody with counseling…. I don't buy it. The jury didn't buy it. The police didn't buy it, and your wife didn't buy it either, Mr. Curry. We find as aggravating circumstances the violation of the position of trust….

(Sentencing Tr. 10-11.) The record makes it clear that Curry asked the trial court to consider his therapy as a mitigator but that the court did not find it to be one—not that the court considered therapy as an aggravating factor when it determined the sentence.

In addition, we cannot conclude that this constituted an abuse of discretion. Among the evidence presented to the trial court during Arbogast's testimony was a listing of the days during which Curry consulted with Arbogast for therapy. Of thirteen dates Arbogast listed, eight of the counseling sessions occurred within three months—during April, May, and June 2010—of the last date of the charged offense. Curry attended only four more counseling sessions in 2010, and only one counseling session in 2011. (Trial Tr. 237.)

In addition to this evidence at trial, Crystal provided a victim impact statement that was submitted to the trial court together with Curry's presentencing investigation report.[9] In her statement, Crystal indicated that Curry's seemingly sincere remorse for his offense diminished once he started therapy and hired an attorney, and stated that he took actions to create financial burdens for her, M.Z., and X.C. Taken together with Curry's relatively spotty attendance at therapy, where the only contested issue at trial was Curry's intent, we cannot conclude that the trial court abused its discretion when it concluded that Curry's

---

[9] Curry did not object to the contents of Crystal's statement or the trial court's consideration of it, nor did he otherwise dispute the accuracy of the presentencing report.

31

therapy was not a mitigator.

We turn now to the appropriateness of Curry's sentence. Under Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." It is the defendant's burden to persuade this court that his sentence "has met th[e] inappropriateness standard of review." Anglemyer, 868 N.E.2d at 494 (quoting Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006)).

In Reid v. State, the Indiana Supreme Court reiterated the standard by which our state appellate courts independently review criminal sentences:

> Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of a sentence through Indiana Appellate Rule 7(B), which provides that a court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The burden is on the defendant to persuade us that his sentence is inappropriate.

876 N.E.2d 1114, 1116 (Ind. 2007) (internal quotation and citations omitted).

The court more recently stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. One purpose of appellate review is to attempt to "leaven the outliers." Id. at 1225. "Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of

the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Id. at 1224.

Curry was convicted of Child Molesting, as a Class C felony. The sentencing range for this offense runs from two to eight years imprisonment, with an advisory sentence of four years. I.C. § 35-50-2-6(a). Here, Curry was sentenced to five years imprisonment, one year longer than the advisory sentence, all as executed time.

Curry placed M.Z.'s feet and toes in his mouth in order to arouse his sexual desires. M.Z., who was five years old at the time of the offense, had no apparent understanding of what Curry was doing, though she thought it unusual enough that she informed her mother, Crystal, the same day. M.Z. was Curry's step-daughter, but called Curry "Daddy," and the evidence introduced to the trial court showed that M.Z. viewed Curry as her father in most respects. (Ex. 1.) Thus, while Curry's offense was not particularly heinous when compared to other categorical sex offenses and does not appear to have had significant impact on M.Z., M.Z.'s young age and Curry's parental role in her life work together to make Curry's offense more grievous.

With respect to the nature of his character, Curry maintained steady employment for a number of years and maintained a home-based business. He also attended college classes. Crystal told Detective Morales that, outside of the instant offense, Curry was a good father and husband. However, Crystal's victim impact statement reveals that Curry's conduct soon after starting therapy reflected "apath[y]" toward her and her children, including actions that created financial problems for Crystal and blaming others for his offense. (Appellee's App.

9.) Of significance, though, is that Curry has no prior criminal history.

Thus, while the nature of Curry's offense taken together with his character as reflected in Crystal's victim impact statement demands executed time, we believe that absence of a criminal history makes the five-year sentence inappropriate under Appellate Rule 7(B). We therefore order the imposition of the statutory advisory sentence of four years imprisonment.

## Conclusion

The trial court did not abuse its discretion when it did not issue Curry's proffered instructions regarding Battery as a lesser included offense of Child Molesting. Nor did the trial court abuse its discretion in admitting into evidence the video recording of Curry's interview with Detective Morales or in excluding certain testimony from Curry's therapist. Curry has failed to establish that the trial court was biased against him. A five-year sentence is inappropriate, and we therefore remand for downward revision of the sentence to a four-year term.

Affirmed but remanded for sentence modification under Appellate Rule 7(B).

BAKER, J., and DARDEN, J., concur.