ATTORNEY FOR APPELLANT
Jason A. Childers
Anderson, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana



FILED
Jul 08 2010, 3:06 pm
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 48S05-0911-CR-506

STEVEN W. EVERLING,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Madison Circuit Court, No. 48C01-0802-FA-00075
The Honorable Fredrick R. Spencer, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 48A05-0903-CR-153

**July 8, 2010**

**Shepard, Chief Justice.**

A jury found appellant Steven W. Everling guilty of three counts of child molesting and two counts of sexual misconduct with a minor. Although Everling raises several grounds for reversal, we address only whether the judge's conduct during the trial deprived him of a fair trial. Because we conclude that the court's overall conduct evidenced partiality, we reverse and remand for a new trial.

## Facts and Procedural History

Steven Everling's stepdaughter K.P. accused him of fondling her and forcing her into sexual intercourse and oral sex. On February 25, 2008, the State initially charged Everling with two counts of class A felony child molesting and two counts of class B felony sexual misconduct with a minor.

On February 29, 2008, the court ordered the State to provide all discoverable material within ten days of defense counsel's appearance, which occurred on March 24. After the charging information, which listed twenty witnesses, the first discovery document in the appendix was the State's first notice of additional witnesses and an exhibit. The State filed subsequent notices of additional witnesses on June 19, July 1, and October 14; the last of these was two weeks before trial. None of the State's witness lists included more information than a job title.

The State also amended its information on June 13 and July 15, and on October 30, after the jury had been sworn. The final charging information included three counts of class A felony child molesting and two counts of class B felony sexual misconduct with a minor. The molestation charges focused on Everling's fondling K.P., threatening to kill her, having sexual intercourse with her before her fourteenth birthday, and performing deviate sexual conduct upon her.[1] The charges of sexual misconduct with a minor rested on his having intercourse with K.P. and having her perform oral sex between her fourteenth and sixteenth birthdays.[2]

---

[1] Ind. Code § 35-42-4-3 (2008) states in relevant part,

2

On April 17, 2008, Everling moved for a continuance of the trial without the State's objection, which the court denied. About a month later, the State moved to continue the trial a week before it was to start, and the court granted the motion. Everling's lawyer experienced a flare up of his Crohn's Disease, so on June 19, 2008, he moved for a further continuance and attached a doctor's note. The court granted this motion. On July 18, Everling again moved to continue, which the trial court granted on the day the trial was scheduled to begin; it appears that all concerned expected this ruling, as neither Everling nor his counsel appeared in court that day.

---

(a) A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if:

> (1) it is committed by a person at least twenty-one (21) years of age;
>
> . . . .

(b) A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony. However, the offense is a Class A felony if:

> (1) it is committed by using or threatening the use of deadly force;
>
> . . . .

[2] Ind. Code § 35-42-4-9 states in relevant part,

(a) A person at least eighteen (18) years of age who, with a child at least fourteen (14) years of age but less than sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits sexual misconduct with a minor, a Class C felony. However, the offense is:

> (1) a Class B felony if it is committed by a person at least twenty-one (21) years of age;
>
> . . . .

On June 20, 2008, four days before the new trial date, the prosecution moved the court to order Everling to produce his witness and exhibit list, including synopses "of what each witness shall say, along with a copy of each exhibit the defense intends to offer at trial attached to same." (App. at 224, 251–52.) There was never a comparable order that the State provide detail on its witness lists.

Everling did not submit a witness and exhibit list until October 23, 2008, five days before a trial finally occurred. The next day the court granted a State motion that had been pending since July 15, 2008, to exclude Everling from "calling any witnesses other than the Defendant, or introducing any exhibits, other than those the State has provided." (App. at 117, 188.)

The defense witnesses barred by this order mostly fell into two categories: alibi witnesses who would testify that Everling generally was not at home during the mornings as K.P. alleged, and witnesses who would describe K.P.'s reputation for untruthfulness (some of whom the prosecution also listed, including one who testified). (App. at 120; alibi—Mitchell Slayton, Tr. at 46–47; Josh Pete, Tr. at 46–47; Rob Price, Tr. at 48; Angie Wycoff, Tr. at 49; Josh Reed, Tr. at 52; Kay Lark, Tr. at 54; Steven Everling, Jr., Tr. at 56; K.P.'s untruthfulness—Gary Davis, Tr. at 47–48; Nora Henson, Tr. at 49; Amber Henson, Tr. at 49; Pat and Karen Beeman, Tr. at 51; Kelly Davis, Tr. at 51; Heather McClain, Tr. at 52–54; teachers Vickie Blair, Karen Able, Joan Mercer, and Linda Personette, Tr. at 57–58; and Tami Biele, Tr. at 45–46, 82–83; also called by prosecution, App. at 233, 235, but excluded—Frankton-Lapel Schools record-keeper, Tr. at 55; Elwood Community Schools record-keeper; Dawn Parish, Tr. at 52; also called by the prosecution and admitted—Dutch Parish, Tr. at 171–88.)

Despite its blanket exclusion, the court revisited Everling's witness list at the beginning of trial and considered each of the witnesses in turn. (Tr. at 33–59.) It excluded the alibi witnesses because no notice of any alibi witnesses had been filed. The court excluded those who would testify about K.P.'s reputation because the State had not been informed of any character witnesses.

4

The State intended to introduce photographs of K.P. taken in July 2008 showing injuries to her hymen and vagina. In September, the State sent Everling's counsel a letter informing him of this examination. The photographs were too dark to see anything, and the deputy prosecutor attached the wrong medical records. Replacement photographs were taken on October 9, 2008. Shortly after this, the State sent Everling's counsel Zaki Ali the usable photographs and the correct medical records. At about this time, Ali began making efforts to call medical witnesses to refute K.P.'s testimony. Once the court granted the State's broad motion to exclude, however, Ali ended these efforts.

One such medical witness for the defense was Tami Biele, a nurse practitioner who was to testify that K.P. did not mention Everling's behavior when he and K.P.'s mother brought her to the doctor after she had unprotected sex with a partner about whom the parents knew. (Tr. at 82.) Biele had been listed on Everling's witness list. Biele's employer moved to quash a subpoena for its records of the event on health privacy grounds, and the court granted the motion.

On the first day of trial, Judge Spencer made the attorneys aware of Redding v. State, 844 N.E.2d 1067 (Ind. Ct. App. 2006), and an unspecified Seventh Circuit opinion, to the effect that the rape shield statute cannot be used to deny a defendant a fair trial. Based on this information, the attorneys met that evening with Biele to explore whether her testimony would be necessary under these precedents.

That same day Everling's attorney asked Dr. Philip Merk, a physician he had previously contacted, to submit his curriculum vitae, which he faxed the morning the trial was to begin. (Tr. at 118.) Ali handed the deputy prosecutor a copy that morning and moved the court to permit Everling's witness. Dr. Merk was to testify based on the photographs that "there is no injury to [K.P.'s] hymen area or to her vagina." (Tr. at 118.) Although the State knew Everling was planning to call medical witnesses, this was the first time the defense named Merk. The State filed a motion to exclude Merk the same day.

5

In the preliminary stages of the trial, the State moved in limine to limit cross-examination to the scope of direct examination, which the court granted. Ali made no objection to this. At the end of the October 28 preliminary hearing, Ali, who had earlier proposed a January 2009 date for trial, again moved to continue the proceedings, which the court denied.

The next day, the court indicated that because "the physical condition of the complaining witness has been known to be an issue in the case for quite some time," yet Everling had not listed Merk, it would not allow him to testify. (App. at 337.) During trial, Ali again made an offer of proof to the effect that Merk examined the photographs taken by Holly Renz and concluded that K.P. had not suffered any injury to her hymen or vaginal area. (App. at 386–87.) He also pointed out that the State had not provided the photographs until twelve days before trial. The court reiterated that Merk had not examined K.P. but had only seen photographs.

More than a month before all this, on September 23, 2008, Ali moved for a change of judge in five criminal proceedings in which he was defense counsel because he had filed a complaint with the Indiana Commission on Judicial Qualifications. The motion for change of judge alleged that Judge Spencer "cannot be fair and impartial under the Judicial Cannons [sic] and shall remove himself from all of counsel's cases." (App. at 308.) The court denied the motion, stating, "There's nothing to discuss. Your belief that I should disqualify myself because you filed a complaint against me is incorrect. The hearing is closed. Thank you, gentlemen."[3] (App. at 5, 310.)

---

[3] On this point, the court was correct. The existence of a judicial disciplinary complaint, standing alone, does not warrant recusal or work a disqualification. See In re Appointment of Special Judge in the Wabash Cir. Ct., 500 N.E.2d 751, 752 (Ind. 1986).

Ali then petitioned this Court for writ of mandamus and prohibition, asking that we direct Judge Spencer to grant his request for a change of judge. (App. at 105.) We denied Ali's request for an emergency writ and, after further briefing, we denied the remaining requests. (App. at 35, 105.)

Throughout all these proceedings and during the trial, Judge Spencer made several comments regarding Ali in open court, outside the presence of the jury. He alluded to previous problems with Ali and said, "I'll tell you right now if you do that, you're gonna spend the night in jail. . . . But editorial comments from you, sir, suggesting that somehow we're cheating this man out of a fair trial because you try to offer irrelevant evidence is just not gonna fly this time. That plane just crashed. Don't try it." (App. at 325–26.) In this same dialogue, Judge Spencer stated, "We never had a problem until you started trying to offer all this irrelevant stuff." (App. at 326.) He also accused Ali of trying to leave a false impression with a jury in a previous case. (App. at 326–27.)

With the background of Ali's motion for a change of judge and the petition this Court denied, Judge Spencer stated during jury selection, "What he's doing . . . what he's doing obviously is attempting to get me to say something to prove see, I told you, he's prejudice[d] against me." (App. at 331.)

On more than one occasion, Judge Spencer called into question Ali's claim of illness. In discussing Everling's witnesses, Ali referred to his illness that had earlier caused a continuance: ". . . as you well know that I was ill and almost on my deathbed." (Tr. at 32.) Judge Spencer replied, "Well, I thought you were ill[,] and [prosecuting attorney] Mr. Ragains thought you were ill, but when it serves your interest, you're not ill." (Tr. at 32.) During a conversation regarding our denial of Ali's petition, Judge Spencer said, "I'm glad you're well, Mr. Ali. I don't want you to be sick." (App. at 332.) Ali replied, "I'm not well, Judge." (App. at 333.) To this Judge Spencer quipped, "Well, you're well enough to find your way to the Supreme Court." (Id.) Ali responded, "Yes, I am, sir, and I'm well enough to find myself here in trial today, sir, because I

7

don't have a choice and I have a duty with my client." (Id.) From this point, Judge Spencer and Ali went back and forth about our denial and what it meant, ending with the court denying Ali's oral motion for a continuance.

Counsel and the court discussed the relevance of an encounter between K.P.'s father and Everling after K.P. had made the allegations, again outside the jury's presence. After explaining why Everling's demeanor during this encounter was not relevant, Judge Spencer said, "If the Pope had been there it doesn't make it relevant, Mr. Ali. Please." (Id.) A moment later, Ali, clearly frustrated, made the following remark: "You know I just find it so fascinating that I must be a complete idiot when it comes to the law, the rules of evidence, asking questions." (Id.) To this, Judge Spencer replied, "Some days I think that, Mr. Ali." (App. at 390.)

Again outside the jury's presence, during a discussion about whether the defense had opened the door for the State to ask K.P. about an unrelated report she made against Everling and her mother, Ali stated that he was offended and bothered by the prosecutor and the court "saying that I do a lot of unethical things in court." (App. at 383; Tr. at 391–94.) During this exchange, Judge Spencer said, "You have done unethical things in court before and you know you have." (App. at 383.) This heated discussion even included Ali exiting and re-entering the courtroom, apparently to calm himself. (Tr. at 396.) Eventually, the judge ruled for the State.

Some similar exchanges occurred in the jury's presence. For instance, after the State objected to a question as outside the scope of direct examination, regarding K.P. taking her siblings back to her mother's, Ali explained that he was just trying to defend his client. Judge Spencer replied that maybe Ali "shouldn't have agreed to it," meaning the parties' agreement limiting cross-examination to the scope of direct examination. (Id.)

During the testimony of K.P.'s maternal grandmother, the State asked why K.P.'s grandfather took K.P. to school. (App. at 351.) Judge Spencer interrupted and said, "Isn't that

what grandpas do?" (Id.) The witness replied, "That's what grandpas do." (Id.) Judge Spencer exclaimed, "Darn right." (Id.)

Once the trial began, Ali sought to show that K.P. not only had a bad relationship with Everling but with her mother as well, which was related to her feelings toward Everling. (App. at 376–79.) Ali was not allowed to cross-examine K.P. on her relationship with her mother because it was outside the scope of direct examination. (Id.)

While Ali was questioning K.P., the prosecutor objected to a question regarding whether K.P. told her aunt Lisa Brown "that Steven had a gun and was gonna shoot you or your sister." (App. at 380.) As the prosecutor tried to remember a detail from Brown's testimony, the judge cut him short, saying, "It's really collateral." (Id.) The prosecutor then said, "It is." (Id.) When Ali disagreed, Judge Spencer said, "Well, I don't care if you disagree. It is collateral." (App. at 381.) Further into the discussion, Judge Spencer asked Ali, "You ever been in a knife fight? It don't matter. They'll both kill you. Move on please. That is collateral." (App. at 381.) Ali replied, "To answer your questions, sir, no, I've never been in a knife fight." (Id.)

When Ali attempted to elicit from K.P. that Everling was not the only reason she missed school, Judge Spencer remarked, "her stepfather kept her home from school[,] and I don't think that's in dispute." (App. at 382.) In fact, it was one of the disputed facts, as Ali noted. (Id.)

On several occasions, Judge Spencer offered explanations for the State, regarding either the State's objection or its response to Everling's objection. (App. at 346, 374–75, 388.) For instance, when mental health clinician Charla Hazen referred to her notes and Everling objected, Judge Spencer retorted, "How can any healthcare person anywhere testify about hundreds of cases without looking at their records? It just can't be done. It's alright." (App. at 346.) Judge Spencer also prevented Everling from responding to one of the State's objections. (App. at 389.)

9

The jury found Everling guilty on all five counts. After hearing testimony from Everling's wife, pastor, mother, and sister, Judge Spencer found Everling's position of trust with K.P., causing her post-traumatic stress disorder, keeping her home from school, and molesting her multiple times as aggravating circumstances. He noted that Everling had no previous criminal history and found that incarceration would pose a hardship. These were the only mitigating circumstances enumerated. The court also commented, "I think clearly what we have here are horrible crimes, but I don't think I have a horrible person." (App. at 405.) The court then found that the aggravators outweighed the mitigators.

The court sentenced Everling to forty years for Count I, child molesting, a class A felony; forty years for Count II, child molesting, a class A felony; fifteen years for count III, sexual misconduct with a minor, a class B felony; fifteen years for count IV, sexual misconduct with a minor, a class B felony; and forty years for count V, child molesting, a class A felony. The court ordered count I served consecutive to count III and count II served consecutively to count IV. It also ordered count V served consecutively to counts I, II, and III. At the sentencing hearing, Judge Spencer said this totaled fifty-five years. (App. at 407.) The chronological case summary, however, indicates that Everling is sentenced to 110 years, and the abstract of judgment does not total the sentence. (App. at 7, 11.)

Everling has argued on appeal that his attorney was ineffective, that Judge Spencer was biased against him, and that his sentence was an abuse of discretion and inappropriate. (Appellant's Br. at 8–24.) The Court of Appeals affirmed on all substantive grounds but remanded for the court to clarify whether it intended a 55-year or a 110-year sentence. Everling v. State, No. 48A05-0903-CR-153, slip op., (Ind. Ct. App. Aug. 12, 2009). We granted transfer. Everling v. State, 919 N.E.2d 556 (Ind. 2009) (table).

## Standard of Review

Indiana law presumes that a judge is unbiased and unprejudiced. See Garland v. State, 788 N.E.2d 425, 433 (Ind. 2003) (affirming denial of change of judge motion); Ind. Judicial Conduct Canon 2.2 ("A judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially."). To rebut this presumption, a defendant must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy. Smith v. State, 770 N.E.2d 818 (Ind. 2002).

## Everling Was Denied His Right to an Impartial Judge.

Everling challenges his convictions arguing that he did not receive a fair trial before an impartial judge. (Appellant's Br. at 11, 14.) A trial before an impartial judge is an essential element of due process. Caperton v. A.T. Massey Coal Co., 129 S. Ct. 2252, 2259 (2009) (quoting In re Murchison, 349 U.S. 133, 136 (1955)); Marcum v. State, 725 N.E.2d 852 (Ind. 2000). The impartiality of a trial judge is especially important due to the great respect that a jury accords the judge and the added significance that a jury might give to any showing of partiality by the judge. Cook v. State, 734 N.E.2d 563 (Ind. 2000).

As Justice Hunter wrote for this Court, the jurors' customary respect for the judge "can lead them to accord great and perhaps decisive significance to the judge's every word and intimation. It is therefore essential that the judge refrain from any actions indicating any position other than strict impartiality." Kennedy v. State, 258 Ind. 211, 226, 280 N.E.2d 611, 620–21 (1972).

In assessing a trial judge's partiality, we examine the judge's actions and demeanor while recognizing the need for latitude to run the courtroom and maintain discipline and control of the trial. Timberlake v. State, 690 N.E.2d 243 (Ind. 1997). "Even where the court's remarks display

a degree of impatience, if in the context of a particular trial they do not impart an appearance of partiality, they may be permissible to promote an orderly progression of events at trial." Id. at 256 (quoting Rowe v. State, 539 N.E.2d 474, 476 (Ind. 1989)). Bias and prejudice violate a defendant's due process right to a fair trial only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding. Smith, 770 N.E.2d at 823 (citing Resnover v. State, 507 N.E.2d 1382, 1391 (Ind.1987)). Adverse rulings and findings by a trial judge from past proceedings with respect to a particular party are generally not sufficient reasons to believe the judge has a personal bias or prejudice. Voss v. State, 856 N.E.2d 1211 (Ind. 2006).

In Brannum v. State, 267 Ind. 51, 366 N.E.2d 1180 (1977), the appellant Mary Brannum claimed that the judge presiding over her trial improperly imposed himself into the proceedings and deprived her of a fair trial. The judge made comments during voir dire before prospective jurors criticizing one of them (whom the prosecution had already challenged for cause), because the juror had stated he could not sentence someone to life imprisonment. Id. at 52–53, 366 N.E.2d at 1181–82. During the trial the defense called the sheriff to show that he had tried to influence another witness. The court sua sponte made a lengthy statement that he would not allow the sheriff to testify because he had been in and about the courtroom during the testimony of several witnesses. Id. In this statement, the judge also analyzed the testimony of the witness. Id. at 54–55, 366 N.E.2d at 1183. Finally, when the jury had some questions during deliberations, both attorneys agreed that the judge would read the instructions without comment to the jury. After doing this, the judge gave the jury additional instructions emphasizing that there were no lesser included offenses in the felony murder charge, essentially commenting on the defense's final argument. Id. at 57, 366 N.E.2d at 1184.

We held that the judge in <u>Brannum</u> violated his duty to refrain from imposing himself and his opinions on the jury, that he overstepped into the province of the jury by analyzing a witness's testimony, and that giving an additional instruction <u>sua sponte</u> tended to tell the jurors what they ought to do and violated the statutory order of proceedings.[4]  <u>Id.</u> at 53–58, 366 N.E.2d at 1182–85.  We noted that there were "other incidents throughout the trial of which the defendant complains, in which the court imposed himself by interrupting defense witnesses and defense counsel," but that the seriousness of those mentioned was sufficient.  <u>Id.</u> at 59, 366 N.E.2d at 1185.  We concluded:

> [I]n order for the criminal justice system to survive, our courts must be forums in which all parties can receive a fair and impartial trial.  Impartiality insures that persons guilty of crimes be convicted and punished, and that innocence be likewise determined. The trial judge must thus preside over the case in a strictly impartial manner to be able to determine that the facts and the law are being properly presented and so reach a proper legal result. The conduct and strategy of the parties are to be left to them. The ultimate decision is to be left to the jury. We feel the trial judge did not properly act in accordance with these principles here, and we reverse the conviction of appellant in order that she be given a new trial.

<u>Id.</u> at 59–60, 366 N.E.2d at 1185.

In <u>Dewey v. State</u>, 264 Ind. 403, 345 N.E.2d 842 (1976), a criminal defendant contended he was entitled to a mistrial because after the State objected to a question to one of the victims, the judge made the following comment: "You know, with all these objections—there's no law against the truth creeping into the record, you know.  Let's just see if we can hear some evidence now.  Go ahead and ask the question."  <u>Id.</u> at 409, 345 N.E.2d at 846–47.  We held that the

---

[4] Practice on such matters as responding to jury inquiries has shifted since 1977.  <u>See</u> Ind. Jury Rule 28.

comment was clearly improper but found no error because the jury was properly admonished and the defendant was thus not prejudiced. Id. at 409, 345 N.E.2d at 847.

In Smith, 770 N.E.2d at 823, we concluded that Smith had not carried his burden of proof that the judge was biased or prejudiced. The imposition of the maximum sentence, a reference to the Bible, and comments on the heinous nature of the crime did not express the court's opinion on the merits of his sentence. Smith, 770 N.E.2d at 823–24.

Unfortunately, this is not the first case in which Judge Spencer made inappropriate declarations in a criminal trial. In Abernathy v. State, 524 N.E.2d 12 (Ind. 1988), a case very similar to this one, the defendant asserted Judge Spencer abandoned his position of impartiality by intervening with comments and questions throughout the proceedings. Judge Spencer asked witnesses questions like "Ma'am, don't you go to church?," "You're not in the habit of telling things that aren't true, are you?," and "You were making it all up, is that what you're saying?" Id. at 14. We held that the judge did not maintain a position of neutrality, impeached or discredited witnesses, and indicated his opinion of the witness' credibility. Id. at 15. In that case, these comments suggested that the judge disbelieved witnesses who suggested the sexual intercourse at issue was consensual, which was the fulcrum of the defense's case. Id. We reversed and remanded for a new trial.

The conduct to which Everling points as showing the court's partiality can be categorized as comments to counsel, comments in front of the jury, uneven tolerance of late filings, and erroneous rulings. Everling asserts that while Judge Spencer's individual actions may not raise an issue of partiality separately, "when looked at as a whole, it becomes clear that the Trial Court lacked impartiality in its treatment of Mr. Ali and Steven's case as a whole." (Appellant's Br. at 21.) The State responds that the criticisms of Everling's attorney showed no personal bias against either the defendant or counsel and that the court's rulings were within its discretion. (Appellee's Br. at 15.) It characterizes any questionable conduct as "isolated incidents" and

maintains that Judge Spencer's criticisms of "Mr. Ali's tactics certainly do not show a personal bias against [Everling]." (Appellee's Br. at 15–16.)

Judge Spencer made the most damaging comments outside the presence of the jury. The weightiest of these is the comment that Ali had done unethical things in court. (App. at 383; Tr. at 394.) The State again characterizes these comments as isolated and states that they communicate the court's conclusion that "some of defense counsel's tactics in this proceeding and others [were] problematic." (Appellee's Br. at 15.)

Wishing that it were otherwise, we conclude that taken together, Judge Spencer's comments and procedural rulings demonstrate a lack of impartiality.

As for comments in front of the jury, Everling claims that the comment that Ali should not have agreed to the limitation of cross-examination gave the jury the impression that Ali "was not properly representing Steven and that evidence was being kept from the jury." (Appellant's Br. at 18.) Regarding the comments about knife fights, the State responds that Everling did not suffer prejudice from these because a knife or a gun is a deadly weapon under Indiana law, so the jury would convict him of the class A felony child molesting count in any case. (Appellee's Br. at 16.) What matters here is not the legal question but the general demeanor taken with defense counsel. These comments were adversarial if not condescending, and they certainly communicated to the jury that Ali was a less than competent attorney. They were improper and most likely gave the jury an unfavorable impression of the defense.

Everling claims that Judge Spencer's mistaken statement that Everling keeping K.P. home from school was not in dispute invaded the jury's role. (Appellant's Br. at 20.) The State argues this did not show bias and that whether Everling was the only reason K.P. ever was truant is irrelevant to whether he ever kept her home. (Appellee's Br. at 17.) Again, this comment was undeniably mistaken. Had it been the only negative comment made by Judge Spencer, it may

not have been prejudicial.  Because it was one of several, however, it added to the overall effect of the court's unnecessary commentary.

Everling also points out that the court regularly assisted the prosecution in making and responding to objections.  (Appellant's Br. at 19–20, citing App. at 374–75, 384, 388–89, 406, 461–62.)  The State characterizes these as isolated incidents "clarifying the State's objections" and argues they did not show bias.  (Appellee's Br. at 17.)  While the court's interventions may have made the proceedings somewhat more efficient, their context and one-sidedness convince us they were improper and gave an impression of partiality.

We cannot ignore the cumulative effect of disparaging comments throughout the course of proceedings, both in front of and away from the jury, simply because each of them would otherwise not suffice to reverse.  The State does not persuade us that these numerous incidents were each "isolated incidents."  The court's comments reveal a prejudice against Ali and his client.

Everling further claims that the court's treatment of witnesses was inconsistent and shows bias.  (Appellant's Br. at 16.)  The State points out that Everling ignored the court's orders to submit witness and exhibit lists, arguing that its amended witness lists and information exhibited good faith on its part calling for different treatment.  (Appellee's Br. at 15.)

Everling attempted to call twenty-two excluded witnesses.  Ali did not submit a notice of alibi witnesses twenty days ahead of trial as required.  See Ind. Code § 35-36-4-1 (2008).  The alibi witnesses were coworkers, clients, and a leader of a Head Start program.  They would have testified that Everling generally was not home in the mornings.  Because none of them would have been able to directly counter K.P.'s allegations, we think their exclusion did not by itself work to prejudice Everling.

16

The witnesses who would testify as to K.P.'s reputation for not telling the truth included classmates, family members, and teachers. They would contribute to the defense's theory that K.P. was lying about Everling. The court excluded all these witnesses because Ali did not notify the State that there would be "anybody who is going to testify as to her reputation for truthfulness." (Tr. at 48–49, 51, 57–58.)

It is fairly clear that both attorneys knew about these witnesses, but the State maintained that Ali did not characterize any of them as challenging K.P.'s truthfulness. (Tr. at 48.) Attacking her truthfulness was a central part of Everling's case. While K.P.'s truthfulness did come up in the defense's questioning of other witnesses, they very well could have convinced the jury to doubt her creditability. Their exclusion was therefore prejudicial.

The remaining witnesses to K.P.'s truthfulness were Heather McClain and Tami Biele. They would both testify about interviews they had with K.P. McClain, a member of the Anderson Police Department who interviewed K.P., was listed on the State's first information. The court mulled over whether to admit her testimony, but seemed to lean toward excluding it as hearsay before moving on to warn Ali about statements to the jury. (Tr. at 52–54, 58–59.) The court excluded Biele, who would have testified that K.P. had not mentioned Everling's conduct when she discussed another sexual partner, by granting her employer's motion to quash. (App. at 112.)

Finally, Dr. Merk's testimony was perhaps the most important to Everling's case. Because Merk would have presented an alternative explanation for physical evidence of the crime, it is the most specific challenged testimony. (Tr. at 118.) While the State did not know of Merk until the eve of trial, it had not yet begun its case-in-chief. Its opening statement could have been altered, and a short continuance would have remedied any surprise. Because Merk's testimony would have been so important and Ali's illness excuses his delay to a great extent, we conclude excluding him was an abuse of discretion.

17

We also note that a continuance would have solved the problems Judge Spencer sought to address with exclusions by giving the State time to learn more from Everling's witnesses. Judge Spencer commented that Ali had asked the trial to be set in January rather than in October. (App. at 333.) In light of Ali's illness and the court's last-minute indication that K.P.'s sexual history might not be categorically excluded, a continuance of thirty days may have made a world of difference. Further, although Everling did not submit his witness list until days before trial, the State conceded that it had spoken to some of those listed. (App. at 311.)

The cumulative result of Judge Spencer's comments, exclusions, and general demeanor toward the defense was a trial below the standard towards which Indiana strives.

## Conclusion

We reverse and remand for a new trial.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.