## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2017, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Wendell Brown
Greencastle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Wendell Brown,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 29, 2017

Court of Appeals Case No.
49A04-1507-CR-928

Appeal from the Marion Superior Court.
The Honorable Lisa F. Borges, Judge.
Trial Court Cause No.
49G04-1502-F5-3976

**Barteau, Senior Judge**

# Statement of the Case

Wendell Brown appeals his conviction of attempted fraud on a financial institution, a Level 5 felony.[1] We affirm.

# Issues

Brown presents four issues for our review, which we restate as:

I.  Whether the trial court had jurisdiction.
II.  Whether the charging information was defective.
III.  Whether the evidence was sufficient to support Brown's conviction.
IV.  Whether the trial court committed fundamental error.

# Facts and Procedural History

In December 2014, Brown purchased a car from a car dealership in Marion County with a cashier's check. Shortly thereafter, a bank employee informed the car dealership that Brown's check was not valid. Based upon this incident, the State charged Brown with attempted fraud on a financial institution, a Level 5 felony; two counts of forgery, both Level 6 felonies; and auto theft, a Level 6 felony.

A bench trial was held on May 26, 2015, and Brown was found guilty as charged. At sentencing, the trial court entered judgment of conviction only on

---

[1] Ind. Code §§ 35-43-5-8 (2014); 35-41-5-1 (2014).

the offense of attempted fraud on a financial institution, sentenced Brown to five years, and ordered the sentence to run consecutively to his sentences in other causes. Brown now appeals.

# Discussion and Decision

## I. Jurisdiction

Brown first contends that the trial court lacked jurisdiction. Indiana courts must possess two kinds of jurisdiction to adjudicate a case: subject matter and personal. *Taylor-Bey v. State*, 53 N.E.3d 1230, 1231 (Ind. Ct. App. 2016). Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which a particular proceeding belongs. *Id.* Personal jurisdiction is the power of a court to bring a person into its adjudicative process and render a valid judgment over that person, and it requires effective service of process over the parties. *Johnson v. State*, 957 N.E.2d 660, 662 (Ind. Ct. App. 2011).

As to subject matter jurisdiction, Indiana courts obtain this jurisdiction through the Indiana Constitution or a statute. *Taylor-Bey*, 53 N.E.3d at 1231. Indiana Code section 33-29-1.5-2(1) (2011) provides that all superior courts of this state have original jurisdiction in all criminal cases. In addition, criminal proceedings are, generally, to be tried in the county where the offense was committed. *See* Ind. Code § 35-32-2-1(a) (2005). The offenses involved in this case occurred in Marion County, and Brown was charged and tried in superior

court in Marion County. Accordingly, the trial court had subject matter jurisdiction over Brown's case.

[7] With regard to personal jurisdiction, Brown argues that the trial court did not have jurisdiction over him solely on the ground that he is an "Aboriginal and Indigenous Moorish American National" and thus neither a citizen of the United States nor of the State of Indiana. Appellant's Br. p. 11. However, the Fourteenth Amendment provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. CONST. art. XIV, § 1. Moreover, personal jurisdiction does not require the defendant to be a United States citizen. *Taylor-Bey*, 53 N.E.3d at 1232 (determining that county superior court had personal jurisdiction over defendant despite his contention that he was not United States citizen but was Moorish American National). The trial court had personal jurisdiction over Brown.

## II. Charging Information

[8] Brown next asserts, essentially, that the trial court erred in denying his motion to dismiss the charging information. In support of this claim, Brown argues that the information was defective because it did not state to whom he presented the check and that, as a result, he "had to guess who the check was supposed to have been presented to." Appellant's Br. p. 14.

[9] A trial court's denial of a motion to dismiss is reviewed only for an abuse of discretion. *Study v. State*, 24 N.E.3d 947, 950 (Ind. 2015), *cert. denied*, 136 S. Ct.

412, 193 L. Ed. 2d 325 (2015). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court, or when the trial court has misinterpreted the law. *Estrada v. State*, 969 N.E.2d 1032, 1038 (Ind. Ct. App. 2012), *trans. denied*.

[10] Indiana Code section 35-34-1-2 (2013) sets forth the required contents of the charging information, the overarching purpose of which is to give the defendant particular notice of the crimes with which he is charged so that he can prepare an appropriate defense. *Woods v. State*, 980 N.E.2d 439, 443 (Ind. Ct. App. 2012). Here, the charging information alleges that Brown attempted to commit fraud on a financial institution by "presenting a cashier[']s check that appeared to be authorized by JP Morgan Chase Bank and was associated to a closed account that belonged to Wendell Brown when Wendell Brown knew that said account was closed and said check was not authorized by JP Morgan Chase Bank." Appellant's App., Vol. II, p. 12. Additionally, the probable cause affidavit provided further details that Brown issued an $8,000.00 cashier's check to Ray Skillman West car dealership as a down payment on an automobile. *Id.* at 15.

[11] "It has long been the rule in Indiana that the State may meet its burden of providing sufficient notice of the charges the defendant faces through the combination of an information and a probable cause affidavit." *Tiplick v. State*, 43 N.E.3d 1259, 1269 (Ind. 2015). Taken together, the information and the affidavit in this case provide sufficient facts to allege attempted fraud on a

financial institution by Brown's presentation of a check to Ray Skillman and to apprise Brown that the State would argue that theory at trial.

## III. Sufficiency of the Evidence

[12] As a third allegation of error, Brown claims that the State's evidence was insufficient to support his conviction. When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Sandleben v. State*, 29 N.E.3d 126, 131 (Ind. Ct. App. 2015), *trans. denied*. Instead, we consider only the evidence most favorable to the judgment and any reasonable inferences drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt, the judgment will not be disturbed. *Labarr v. State*, 36 N.E.3d 501, 502 (Ind. Ct. App. 2015). The result of the fact-finder carrying out its function of determining the weight of the evidence and the credibility of the witnesses is that it is free to believe whomever it wishes. *Klaff v. State*, 884 N.E.2d 272, 274 (Ind. Ct. App. 2008).

[13] Indiana Code section 35-43-5-8 provides:

> (a) A person who knowingly executes, or attempts to execute, a scheme or artifice:
>
> (1) . . . . ; or
>
> (2) to obtain any of the money, funds, credits, assets, securities, or other property owned by or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises;

commits [fraud on a financial institution] a Level 5 felony. Subsection (b)(4) of the statute defines "state or federally chartered or federally insured financial institution" to include a bank or financial institution.

[14] The charging information alleged that Brown attempted to obtain United States currency owned by, under the custody of, or under the control of, JP Morgan Chase Bank, a state or federally chartered or federally insured financial institution, by means of false or fraudulent pretenses, representations or promises by presenting a cashier's check that appeared to be authorized by JP Morgan Chase Bank and was associated with a closed account that belonged to Brown when Brown knew that the account was closed and that the check was not authorized by JP Morgan Chase Bank. *See* Appellant's App., Vol. II, p. 12.

[15] At trial, the State presented evidence that Brown had attempted to purchase a car from the Ray Skillman dealership in Marion County, Indiana using a cashier's check for the down payment and was identified from a photo array by both Jacob Morris, Ray Skillman salesman, and Christopher Muhney, Ray Skillman finance manager. Muhney testified that a week after Brown purchased the car, the dealership accounting office informed him that Brown's cashier's check was returned as not valid.

[16] William Smith, fraud investigator with JP Morgan Chase Bank, also testified on behalf of the State. Referring to State's Exhibit 3, a copy of Brown's cashier's check, Smith explained that although it appears to be a cashier's check issued by JP Morgan Chase Bank, it is not because the account number on the

check is a personal account number. He further testified that JP Morgan Chase Bank's cashier's checks are drawn on funds from a separate internal account so personal account numbers are not on the check. Additionally, Smith explained that JP Morgan Chase Bank maintains images of the cashier's checks it issues, and, if the check is not found in the system, it generally indicates the check is counterfeit. He testified that he had examined the records of JP Morgan Chase Bank and had not found this check in its system. Finally, Smith testified that JP Morgan Chase Bank's records indicate that the personal account number on the check was an account belonging to Brown that was opened in December 2006 and closed in May 2007. The State also presented evidence of Brown's knowledge that this account was closed. This evidence is sufficient to show that Brown committed attempted fraud on a financial institution by attempting to cause JP Morgan Chase Bank to transfer $8,000.00 to the Ray Skillman car dealership on the basis of his counterfeit cashier's check.

## IV. Fundamental Error

[17] Finally, Brown alleges that the trial court made several fundamental errors. The fundamental error doctrine is extremely narrow and applies only when the error amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Lehman v. State*, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010), *trans. denied*.

[18] First, Brown contends that the trial court judge "refused to acknowledge [his] jurisdictional challenge or make the [State] prove the court's jurisdiction was

proper" and "refused to take judicial notice of the court's lack of jurisdiction." Appellant's Br. pp. 17, 18.

[19] As discussed and determined in Issue I, *supra*, the trial court had jurisdiction over Brown and his criminal case. In Issue II, *supra*, we determined the State presented sufficient evidence at trial, which included proof that the crime occurred in Marion County, Indiana. In addition, the court did acknowledge and rule on Brown's jurisdictional challenges at the hearing on Brown's motion to dismiss, *see* Tr., Vol. I, p. 87, and at the final pre-trial conference:

> COURT: Okay. But it does say here that you're alleging that you want me to take judicial notice that I don't have jurisdiction.
>
> BROWN: Basically take judicial notice of constitutional law and United States code as well as stare decisis that says that this Court doesn't have judicial — I mean, I'm sorry, jurisdiction.
>
> COURT: Okay. I will take judicial notice of the United States Constitution and US code and stare decisis as I find it applies but I will not take judicial notice of your assertion that I don't have jurisdiction cause I believe I do, all right — I know we disagree on that but I do believe for that — I have jurisdiction and your record is clear, okay?
>
> BROWN: Well, I — I know that one case cited in that judicial notice states that the State must prove jurisdiction.
>
> COURT: Yes, they have to do that but not until trial.
>
> BROWN: Well —
>
> COURT: They've alleged jurisdiction already. Now they have to prove it at trial.

*Id.* at 102. Accordingly, Brown's claim of fundamental error on this issue fails.

[20]     Next, Brown argues the trial court committed fundamental error by admitting State's Exhibit 3, a copy of the cashier's check, because it "was not the same document provided in the initial discovery" in that it "shows signs of tampering." Appellant's Br. p. 19. A review of State's Exhibit 3 and the document to which Brown directs us reveals no disparity between the two copies of the check. *See* Exhibits Vol. p. 8; Appellant's App., Vol. II, p. 26. Brown has failed to show any error, much less fundamental error.

[21]     Brown's final claim of fundamental error is that the trial judge was not impartial. Trial before an impartial judge is an essential element of due process. *Everling v. State*, 929 N.E.2d 1281, 1287 (Ind. 2010). In assessing a trial judge's partiality, we examine the judge's actions and demeanor balanced with the latitude needed to run the courtroom and maintain discipline and control. *Id.* at 1288. The conduct to which Brown points as showing the court's partiality can be categorized as questioning a witness, clarification of questions and procedure, admission of evidence, and moving forward with the trial.

[22]     The first instance, although described by Brown as the judge giving a legal conclusion on the evidence, is actually the judge re-stating Brown's question to a witness. In a bench trial, the judge is afforded the discretion to ask questions of a witness to aid in the fact-finding process provided that it is done in an impartial manner and the defendant is not prejudiced. *Jones v. State*, 847 N.E.2d 190, 198 (Ind. Ct. App. 2006), *trans. denied*. Here, the judge was attempting to assist Brown, who was representing himself, by clarifying his question to the witness. We discern no bias on the part of the judge.

[23] Brown also points to several instances where the trial judge clarified questions and procedure, which Brown characterizes as the judge "giv[ing] testimony on her conclusion" and "interrupt[ing] questioning with no reason." Appellant's Br. p. 20. Review of the transcript reveals the judge refined Brown's question to a witness to assist him in receiving the information he was seeking and explained to Brown the State's burden of proof, the meaning of a witness's testimony, and legal terminology and process. Despite the rule that the defendant who chooses to exercise his right to proceed pro se must accept the burden and hazards incidental to that position, *see Tapia v. State*, 753 N.E.2d 581, 587 (Ind. 2001), the trial judge here made attempts to help Brown understand the procedure in order to facilitate the fact-finding process and keep the trial moving to conclusion. We therefore find no basis for Brown's contention that the judge failed to act impartially.

[24] Further, Brown asserts that the court's admission of 404(b) evidence constitutes an act of bias. Brown objected at trial to the use of the transcript of his opening statement in another criminal case where he admitted to writing checks on the same account that he used in this case and that it was a closed account. Brown's objection was that he had not been provided a copy of the transcript. The State responded that it filed its notice of intent to introduce 404(b) evidence and that its "recollection . . . [was that] it was stated [Brown] had to provide his own copy." Tr., Vol. I, p. 178. At a pre-trial conference on April 1, 2015, at which Brown was present and in which he participated, the State explained to the court that it had paid for and obtained the transcript from the court reporter

and asked if that could be released to Brown. The court responded that the State is not allowed to release the transcript and that the court reporter would need to provide Brown with a copy. Brown posed no questions to the court in this regard, and he does not assert that he requested the transcript from the court reporter. Thus, we find this situation to be an example not of judge bias but of one of the many pitfalls of self-representation.

[25] Finally, Brown claims the trial court refused his line of questioning and interrupted his closing argument. Review of the transcript of the incidents cited by Brown discloses that the judge instructed Brown to "get [his] line of questioning to something relevant," to stop questioning a witness about a document that she did not prepare and upon which the court had already ruled, and to move on to other more persuasive points in his final argument because the court was not persuaded by the argument he was currently making. *Id.* at 183. "'Even where the court's remarks display a degree of impatience, if in the context of a particular trial they do not impart an appearance of partiality, they may be permissible to promote an orderly progression of events at trial.'" *Everling*, 929 N.E.2d at 1288 (quoting *Timberlake v. State*, 690 N.E.2d 243, 256 (Ind. 1997)). Again, Brown was representing himself, and, on these occasions noted by Brown, the judge was merely attempting to move the trial forward in an efficient manner. Brown has failed to demonstrate that the trial judge failed to act impartially.

# Conclusion

[26] For the reasons stated, we conclude that the trial court had both personal and subject matter jurisdiction in this case, that the charging information was not defective, that the evidence was sufficient to support Brown's conviction, and that the trial court did not commit fundamental error.

[27] Affirmed.

Robb, J., and Mathias, J., concur.