



IN THE

# Court of Appeals of Indiana

Evan J. Schaffer,

*Appellant-Petitioner*

v.

State of Indiana,

*Appellee-Respondent*

May 14, 2026

Court of Appeals Case No.
25A-PC-1682

Appeal from the Lawrence Superior Court

The Honorable John M. Plummer III, Judge

Trial Court Cause No.
47D01-2402-PC-000267

**Opinion by Judge Felix**
Judges May and Mathias concur.

**Felix, Judge.**

## Statement of the Case

After Evan Schaffer was convicted of murder, he filed a petition for post-conviction relief ("PCR"), alleging he received ineffective assistance of trial and appellate counsel. During the evidentiary hearing on the petition, the PCR court questioned one of Schaffer's three trial attorneys about the PCR court's duty to report all three trial attorneys to the Indiana Supreme Court Disciplinary Commission for their alleged mistakes during Schaffer's trial, repeatedly interrupted PCR counsel's objections to this line of questioning, and implicitly threatened to refer Schaffer's trial attorneys to the Disciplinary Commission. The PCR court denied Schaffer's petition. Schaffer now appeals, raising two issues for our review, one of which is dispositive and restated as follows: Whether the PCR court denied him a fair hearing.

We reverse and remand for a new hearing.

## Facts and Procedural History

At approximately 1:00 a.m. on April 23, 2017, after a night of drinking and fishing, Schaffer went to a McDonald's restaurant in Bedford, Indiana. *Schaffer v. State*, 140 N.E.3d 896, No. 18A-CR-2960, slip op. at ¶¶ 2–3 (Ind. Ct. App. Jan. 29, 2020) (mem.), *trans. denied*. In the drive-through line, someone seemingly honked at Schaffer, and Schaffer responded by getting out of his vehicle, walking to Justin Lampkins's truck, and punching him through the open window of his truck. *Id.* at ¶ 4. The incident escalated; at some point,

Schaffer "pulled a pistol and was waving it around." DA Tr. Vol. VIII at 141.[1] Lampkins exited his truck with a "tire-knocker," approached Schaffer, "put his hand on Schaffer's neck, and pushed Schaffer backward." *Schaffer*, 140 N.E.3d 896, No. 18A-CR-2960, slip op. at ¶ 5. Schaffer then shot and killed Lampkins. *Id.*

[4] In 2018, a jury found Schaffer guilty of murder, pointing a firearm as a Level 6 felony, carrying a handgun without a license as a Class A misdemeanor, and battery as a Class B misdemeanor. *Schaffer*, 140 N.E.3d 896, No. 18A-CR-2960, slip op. at ¶¶ 8–9. The trial court sentenced Schaffer to 63.5 years of incarceration. *Id.* at ¶ 9. At trial and sentencing, David Shircliff ("David"), Jennifer Shircliff ("Jennifer"), and Bruce Andis ("Andis") (collectively, "Trial Attorneys") represented Schaffer. On direct appeal, where Schaffer was represented by Lisa Johnson, this court affirmed Schaffer's conviction. *Id.* at ¶¶ 35–36.

[5] On February 17, 2021, Schaffer filed a PCR petition pro se, which he later twice amended through counsel. Schaffer alleged in relevant part that he received ineffective assistance of counsel and alleged his Trial Attorneys as well as appellate counsel performed below an objective standard of reasonableness that also prejudiced him. In particular, Schaffer alleged Trial Attorneys were ineffective for failing to (1) request a voluntary manslaughter instruction, (2)

---

[1] Citations to the PCR record are denoted by "PCR," and citations to Schaffer's direct appeal record are denoted by "DA."

consult with Schaffer about a voluntary manslaughter instruction, (3) properly object to the self-defense instruction, (4) lay a proper foundation for a reckless homicide lesser-included instruction, and (5) preserve a change of venue motion ruling for appeal. Schaffer made additional claims as to the effectiveness of his appellate counsel, including one pertaining to the self-defense jury instruction.

[6] The PCR court summarily denied Schaffer's first amended PCR petition. Schaffer then filed a motion to correct errors, arguing he was entitled to an evidentiary hearing on his petition. During a hearing on the motion to correct errors, the PCR court commented:

> I think that for a lawyer of [David's] caliber to make the mistakes that you're asserting he made, is extremely concerning . . . if he's making these . . . errors along the way that results in a . . . retrial of a murder case. It's very concerning to a trial court that he may come in here and throw himself under the bus to justify a retrial of this case. I have concerns about that.

PCR Tr. Vol. II at 19. The PCR court later granted Schaffer's motion in part, but it denied the motion as to the self-defense instruction claims because "any instructional error alleged by Evan[] Schaffer . . . would have been harmless error because the verdict reached by the jury was clearly supported by the evidence." *Id.* at 199.

[7] In February 2025, at the evidentiary hearing, Schaffer asked the PCR court to take judicial notice of a previous case wherein the PCR court judge found that Andis had rendered ineffective assistance of counsel. During a lengthy colloquy about its admissibility, the PCR court detailed how he had declared a

mistrial and referred Andis to the Disciplinary Commission for his admitted mistake during a trial in that separate case.

[8]   At the evidentiary hearing, David testified that he was lead trial counsel in Schaffer's trial but that he delegated certain responsibilities to Jennifer and Andis. David confirmed that Trial Attorneys' theory of defense was self-defense, but that he had not committed to an all-or-nothing defense. David testified, among other things, that he did not consider or discuss voluntary manslaughter as a lesser-included offense with Schaffer because his understanding of voluntary manslaughter was that it "involve[d] someone coming into a situation like finding their wife in a compromising position with another man, or something like that, where all of a sudden, someone pulls out a gun and then shoots. And so, [he] didn't . . . think that applied." PCR Tr. Vol. II at 57. David also testified that he did not compare the self-defense statute to the pattern instruction because Andis was responsible for jury instructions. However, after comparing the differences for the PCR hearing, David believed an instruction using the statutory language would have changed his closing argument and elevated the State's burden to rebut Schaffer's self-defense claim.

[9]   During Jennifer's testimony, the PCR court asked her what she thought the PCR court's and her own "duty to report" was "for a licensed lawyer who knows that there may be a problem with preparation in such a serious case." PCR Tr. Vol. II at 100. The PCR court later suggested that he "simply wanted to know for credibility reasons" whether the admitted mistakes rose to the level of a reportable disciplinary offense. *Id.* at 103. Schaffer objected to that

question.  Throughout Schaffer's objection, the PCR court repeatedly interrupted PCR counsel and seemed to become defensive.  For instance, when PCR counsel argued that the standard for ineffective counsel is different than "not exercising reasonable diligence . . . under the ethical rules," the PCR court interrupted, saying, "I don't understand why you're accusing the Court now of making these claims against the witness when I simply asked the question." *Id.* at 105.

[10]    During another interruption, the PCR court commented about Schaffer's PCR claims:

> Your claims are very egregious, frankly.  We went through an entire murder trial, and we got now the lawyers sitting here telling me that they were incompetent.  That's about as egregious as it gets, because there's nothing more serious in the United States of America than a murder trial.  There just isn't.  *I don't know how more egregious it can possibly be to have [the] Sixth Amendment violated by who I thought were competent lawyers, and then not follow the rules of professional conduct and turn each other in if that's what happened*, and yet testify about it here in this courtroom.  I'm trying to understand what my duty is at this point.

PCR Tr. Vol. II at 107 (emphasis added).  The PCR court continued to interrupt PCR counsel's objections and denied conflating the right to counsel with the disciplinary process:

> [PCR COUNSEL]:  The objections, I hope, are clear from the record that I think that by combining and equating the Sixth Amendment right to counsel with the disciplinary process --

THE COURT:  I'm not doing that.

[PCR COUNSEL]:  -- it's chilling the --

THE COURT:  No.  That's not what's happening here.

[PCR COUNSEL]:  -- integrity of this PCR process, it chills the ability for Defense Counsel to stand up there and testify truthfully.

THE COURT:  Why?

[PCR COUNSEL]:  It --

THE COURT:  Why in the world does that happen?  She can't testify truthfully because I asked a question?  Why?  Why do you say that?

*Id.* at 112.

[11]  Schaffer then moved for a change of judge, which the PCR court immediately denied.  Jennifer answered the PCR court's question, responding that "isolated errors do not rise to the level of a . . . disciplinary violation."  PCR Tr. Vol. II at 116.  The PCR court commented that "sometimes [mistakes] do rise to the level of violations of the Indiana rules of professional responsibility" and that attorneys should "police" themselves "so that type of thing does not happen, because what would result is something like this . . . .  The PCR claims get brought on the basis of incompetency."  *Id.* at 118.  At the end of Schaffer's case-in-chief, the State did not present any evidence.  Both parties agreed to

submit proposed orders. Referring to the proposed orders, the PCR court said, "[The proposed orders] certainly assist[] the Court . . . so that I don't have to retype it all again, because I'm certainly going to use some of the points that are made probably from each side, right, in terms of formulating the final decision here." Tr. Vol. II at 163.

[12] On June 10, the PCR court issued its findings of fact and conclusions of law which was a verbatim adoption of the State's proposed order. After quoting several of the Indiana Professional Conduct Rules, the PCR court concluded that the "case has produced ethical violations under" the Rules. PCR Appellant's App. Vol. III at 12. The PCR court elaborated:

> On one hand an argument being offered by the Petitioner is that no fewer than three of the five attorneys on this case were so incompetent as to violate Rule 1.1. On the other hand, and the argument being presented by the Respondent, is that the trial attorneys in this case, in an effort to get a second bite at the apple, have provided false and/or misleading information to the Court which violates Rules 3.3 and 8.4.

*Id.* The PCR court also expressed concern that David and Jennifer spoke with Schaffer before the start of the hearing, even though PCR counsel confirmed at the start of the hearing that they just said "hello" to Schaffer and that she was in the room the entire time, PCR Tr. Vol. II at 32. The PCR court then found that

David's testimony was not credible and concluded that all of the alleged errors were strategic decisions rather than mistakes. This appeal ensued.[2]

## Discussion and Decision

### The PCR Court Denied Schaffer a Fair PCR Hearing

[13] Schaffer argues that the PCR court denied him a fair hearing on his ineffective assistance of counsel claims. Specifically, Schaffer argues that he was denied a fair hearing due to the PCR court's (a) "commentary and questioning," Appellant's Br. at 24, and (b) summary denial of his self-defense instruction claims. We address each argument in turn.

### a. The PCR Court's Commentary and Questioning

[14] Schaffer argues that he was denied his right to an impartial judge for the PCR evidentiary hearing. A "trial before an impartial judge is an essential element of due process." *In re J.K.*, 30 N.E.3d 695, 699 (Ind. 2015) (quoting *S.E. v. State*, 929 N.E.2d 1281, 1287 (Ind. 2010)). We presume "that a judge is unbiased and unprejudiced." *S.E.*, 929 N.E.2d at 1287 (citing *Garland v. State*, 788 N.E.2d 425, 433 (Ind. 2003)). "To rebut this presumption, a defendant must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy." *Id.* (citing *Smith v. State*, 770 N.E.2d 818 (Ind. 2002)). "In assessing a trial judge's partiality, we examine the judge's actions and demeanor." *Id.* at

---

[2] We decline Schaffer's invitation to listen to the PCR hearing recording. On appellate review, we base our decision on the written record and admitted evidence. *See Norris v. Norris*, 275 N.E.3d 505, 507 (Ind. 2026) (describing an appellate court's "limited role").

1288 (citing *Timberlake v. State*, 690 N.E.2d 243 (Ind. 1997)). Although in bench trials, "courts have considerable discretion to question witnesses sua sponte 'to aid in the fact-finding process,'" *J.K.*, 30 N.E.3d at 698 (quoting *Taylor v. State*, 530 N.E.2d 1185, 1187 (Ind. 1988)), a judge is not permitted to "act[] as an advocate for either party," *id.* at 699.

[15] Schaffer specifically argues that the "cumulative effect" of the PCR court's comments and questions demonstrates "partiality that undermines the fairness of the PCR hearing." PCR Appellant's Br. at 31. Schaffer points to the PCR "court's questioning of [Jennifer] about her ethics, the court's comments anticipating that [David] would lie, and the court's implications that [David] and Schaffer colluded to present false testimony in front of PCR counsel" as evidence in support of his claim. *Id.*

[16] Here, the PCR court asked questions and made comments throughout the motion to correct errors hearing and evidentiary hearing that were improper. During the former, the PCR court made it clear that he was prejudging David's credibility based purely on whether or not he admitted to making mistakes. The PCR court specifically contemplated that "for a lawyer of [David's] caliber to make the mistakes [being alleged], is extremely concerning . . . . It's very concerning to a trial court that he may come in here and throw himself under the bus to justify a retrial of this case." PCR Tr. Vol. II at 19. The PCR court expressly stated during the hearing that "given [David's] experience . . . that he *would not make mistakes* in a murder trial, that he would have had strategic strategy [sic] in mind at the time that he was making his decisions in the case."

*Id.* at 18 (emphasis added). These comments, made before any evidence had been presented, showed the PCR court's partiality, which was made clearer during the evidentiary hearing.

[17] From the outset of the evidentiary hearing, the PCR court proceeded as though it had prejudged David's credibility and went so far as to question PCR counsel about David greeting Schaffer before the hearing started. During the evidentiary hearing, the PCR court repeatedly interrupted PCR counsel and Jennifer to assert his position that the Trial Attorneys' failure to report one another for ethical violations was proof that David's testimony, wherein he admitted mistakes, was not credible. The PCR court's stated belief that he has the "right to . . . expect [experienced] lawyers to be competent as required by [Rule] 1.1" and that the professional rules "create[e] a duty for the lawyer to report" trial mistakes, PCR Tr. Vol. II at 106–07, shows that his question to Jennifer about his and her duty to report was intended to impeach David's testimony. The PCR court's comments show not only a misunderstanding of our PCR process but also advocacy on the State's behalf. For instance, the PCR court asserted that if the alleged mistakes had occurred, Trial Attorneys should have "*follow[ed] the rules of professional conduct and turn[ed] each other in.*" *Id.* at 107 (emphasis added). The PCR court admittedly believed that if attorneys "police[d]" themselves, then PCR claims would not be "brought on

the basis of incompetency."[3] *Id.* at 118. These comments viewed in light of the PCR court's detailed explanation of how he "immediately drafted a complaint against Mr. Andis and immediately sent that to the [D]isciplinary [C]omission" after Andis admitted to a mistake during another trial, *id.* at 43, suggests the PCR court was threatening to do the same to Trial Attorneys during the PCR evidentiary hearing. These comments and questions suggest that the PCR court abandoned its position as neutral arbiter to act as an advocate on behalf of the State. *See J.K.*, 30 N.E.3d at 699 (prohibiting judges from advocating for either party); *see also Jones v. Full Spectrum Prop. Mgmt.*, -- N.E.3d --, 2026 WL 364352, at *5 (Ind. Ct. App. 2026) (reversing and remanding in part because trial court's "line of questioning" gave "the impression of a trial court acting as an advocate" for one party), *trans. not sought*.

[18] On these facts, we conclude that the cumulative effect of the PCR court's comments and questions show that the PCR court failed to preside over the PCR hearing in an impartial manner and tainted the proceedings such that Schaffer was placed in jeopardy. *See S.E.*, 929 N.E.2d at 1291 (concluding that the "cumulative result" of the trial court's comments and demeanor toward the defense "demonstrate[d] a lack of impartiality" necessitating a new criminal trial). As the State Public Defender suggests, when the PCR court repeatedly

---

[3] We note that competence is the relevant inquiry for attorney discipline under Indiana Professional Conduct Rule 1.1 and not the standard by which to judge an ineffective assistance of counsel claim. *See Bobadilla v. State*, 117 N.E.3d 1272, 1279 (Ind. 2019) (citing *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012)) (stating that evaluating a claim that counsel was ineffective requires proof that "counsel's representation fell below an objective standard of reasonableness.")

discussed his own duty to report, repeatedly interrupted PCR counsel while she attempted to make a record of her objection, detailed his prior history of reporting Andis to the Disciplinary Commission, and allegedly raised his voice "numerous times," "[t]he impression left was the judge was either going to find counsel to be incredible or the judge was going to report counsel under Rule 8.3 for their admitted mistakes." Amicus Br. at 16. The PCR court's findings and conclusions confirmed that impression.[4]

### b. *Summary Denial of Self-Defense Instruction Claim*

[19] Schaffer next claims the PCR court erred by summarily denying his claims for ineffective assistance of counsel relating to the self-defense instruction. We review such claims "the same way as a motion for summary judgment." *Turner v. Sevier*, 227 N.E.3d 978, 981 (Ind. Ct. App. 2024), *reh'g denied* (Apr. 11, 2024) (quoting *Aguilar v. State*, 162 N.E.3d 537, 540 (Ind. Ct. App. 2020), *trans. denied*). When the "determinative issue is a matter of law," we review de novo. *Id.*

[20] A post-conviction court may not summarily deny a petition for post-conviction relief unless "it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the [State] is entitled to

___

[4] Because we have concluded that the PCR court's comments and questions violated Schaffer's right to an impartial judge, we do not address Schaffer's arguments that the PCR court's "findings [were] based on a fundamental misunderstanding of the law." Appellant's Br. at 28.

judgment as a matter of law." Ind. Post-Conviction Rule 1(4)(g). "If an issue of material fact is raised, then the court *shall* hold an evidentiary hearing as soon as reasonably possible." *Id.* (emphasis added). "A hearing is mandatory even when the petitioner has only a remote chance of establishing his claim." *Evolga v. State*, 722 N.E.2d 370, 372 (Ind. Ct. App. 2020) (citing *Gann v. State*, 550 N.E.2d 803, 804 (Ind. Ct. App. 1990)).

[21] In *Evolga v. State*, 722 N.E.2d 370 (Ind. Ct. App. 2000), the petitioner filed a claim for post-conviction relief, which was summarily denied by the trial court. The PCR petition alleged in relevant part that counsel was ineffective. *Id.* at 371. This court reversed the summary denial, holding that the relevant inquiry is not success on the merits, but whether "there existed a genuine issue of material fact as to the effectiveness or adequacy of [petitioner's] counsel." *Id.* at 373. And, because the petitioner made allegations of ineffectiveness while the State merely gave a general denial thereto, there were genuine issues of material fact, entitling the petitioner to a hearing on his petition. *Id.* at 374.

[22] We address a virtually identical set of facts here. Schaffer's second amended petition asserts that the Trial Attorneys were "ineffective for failing to object to Final Instruction 8, the only instruction on self-defense, on the basis that it was an improper or imprecise statement of the law." PCR Appellant's App. Vol. II at 83. As to appellate counsel, Schaffer asserted that she was ineffective for failing to challenge the self-defense instruction in Schaffer's direct appeal. Schaffer alleged specific facts as to both assertions. However, the PCR court summarily denied Schaffer's claims that Trial Attorneys and appellate counsel

were ineffective for failing to properly challenge the self-defense jury instruction. The PCR court's rationale for doing so was that "any instructional error alleged . . . would have been harmless error because the verdict reached by the jury was clearly supported by the evidence." PCR Appellant's App. Vol. II at 199. This ruling addresses the merits of the claim instead of considering whether there was "an issue of material fact" as to the effectiveness of Trial Attorneys and appellate counsel. P-C.R. 1(4)(g). Regardless of the likelihood of success on the claims, Schaffer is entitled to an evidentiary hearing on his claims. Thus, the PCR court erred by summarily dismissing Schaffer's self-defense claims.

[23] In sum, the PCR court's comments and questions cumulatively breached the PCR court's duty of impartiality such that Schaffer was placed in jeopardy, and the PCR court erred by denying Schaffer a hearing on his self-defense claims. We therefore reverse the PCR court on these issues and remand for a new evidentiary hearing not inconsistent with this opinion.

[24] Reversed and remanded with instructions for a new hearing.[5]

May, J., and Mathias, J., concur.

ATTORNEY FOR APPELLANT

---

[5] Because we are remanding for a new hearing, "the parties have ten days from the date the order of the trial court is entered or the date the order of the court on appeal is certified" to file a motion for a new judge, Ind. Trial Rule 76.

Stacy R. Uliana
Uliana Law
Bargersville, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana